Staples, J.
There is no controversy in this case in regard to the facts. They are few and simple, and may be briefly stated. In the year 1856 James W. Leftwich sold to Lewis H. Turnbull a tract of land in Bedford county. The contract was not reduced to *403 writing; but Turnbull was placed in immediate possession, and tbe whole of the purchase money was paid by him. In January 1867 Leftwich executed to Turnbull a deed of release for the land, with warranty of title. Turnbull shortly afterwards sold and conveyed to Howard, and Howard subsequently in 1868, conveyed to Floyd the appellant. In 1866 a judgment was recovered by Board against Leftwich, the original vendor, in the circuit court of Boanofee, which was duly docketed in the county court of Bedford. The claim here is to subject- this land in the hands of Floyd, to the lien of this judgment. The question presented is, whether a parol contract for the sale of land so far executed as to vest in the purchaser a valid equitable title, is good against creditors of the vendor, under the statutes of registration. This question is now exciting no ordinary interest throughout the state. If is understood that numerous cases are pending in the circuit courts, involving a large amount of property, awaiting the decision here. The court has given the subject that consideration its gravity and importance demand.
In the outset it may be well to advert briefly to the ■case of Withers v. Carter & als., 4 Gratt. 407. Ho sound conclusion can be arrived at in this case without a proper understanding of the facts and principles of law involved in that case. There the parties had reduced their contract to writing, and the purchaser was put in possession of the property. Subsequently a deed was executed by the grantor; but it was never recorded, having been lost by the person to whom it was committed to be delivered to the clerk.
At that time the statute required the recordation of deeds, but not of written executory contracts for the sale of land. The court of appeals held that while the *404 effect of the statute was to render the unrecorded deed quoad the creditors of the grantor, a mere nullity, it left the subject precisely in the same situation as if no-deed had been made or attempted. Judge Baldwin, in delivering the opinion of the court said, “It could not be doubted, a fair purchaser of the equitable estate has a right to hold it against creditors of the vendor who have not previously recovered judgments.” • This-decision was rendered at the January term 1848. At the revisal of 1849 an amendment was incorporated in the statute. It is contained in sections 4 and 5, chap. 118, Code of 1849, and is as follows:
“4. Any contract in writing made in respect to real estate, or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall,, from the time it is duly admitted to record, be as against creditors and purchasers as valid as if the contract was a deed conveying the estate or interest embraced in the contract.”
“ 5. Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be.”
These provisions, as will be seen, do not expressly, or even by any fair implication, include all contracts for the sale of land. They apply only to contracts in writing. Having provided for the recordation of written contracts in the fourth section, the framers of the statute by the use of the words, “ such contracts ” in the fifth, evinced a deliberate purpose to confine the *405 operation of that section to contracts in writing. It is obvious that the language was carefully chosen, and the omission to require the recordation of every contract was not accidental. In order to give the statute the construction now contended for, we must strike out, or wholly disregard the words “in writing,” in the one section, or the word “such” in the other. Are we authorized by any rule of interpretation to take such a liberty with a legislative enactment plain and explicit in its terms.
While in the construction of statutes the constant endeavor of the courts is, to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed. The authorities in support of this principal are almost innumerable. It is unnecessary to cite them, as they may be found in Dwarris on Statutes, 181-4, 209; 2, 204-5, 208..
In this connéxion I cannot forbear quoting briefly a portion of the opinion of the supreme court of the United States in the case of Denn v. Reid, 10 Peters R. 524. The case turned upon the proper construction to be given to certain recording aets of Uorth Carolina and Tennessee. Mr. Justiee McLean, after giving his construction of the statute said: “ This, it must be admitted, when we consider the mischief the law was probably intended to remedy, is a somewhat technical construction of the act; and cases may be found where courts have construed a statute most liberally to effectuate the remedybut where the language of the act is explicit, there is great danger in departing from the *406 words used, to give an effect to the law which may be supposed to have been designed by the legislature. ' * * * It is not for the court to say, where the language of. the statute is clear, that it shall be so construed as to embrace all eases, because no good reason can be assigned why they were excluded from its-provisions.”
If the rule of construction here laid down be correct, there would seem'to be an end of the question. But if we are permitted to go outside of the express language of the statute in pursuit of the supposed intention of the legislature, have we such satisfactory and conclusive evidence of that intention here, as to justify the courts in giving to the statute an interpretation so palpably in conflict with its language.
In answering this question it is important to bear in mind the rules of law in respect to parol contracts for-the sale of land. Courts of equity treat such contracts, where there is part performance, as valid and effectual as those evidenced by the most solemn instruments of writing. In order to prevent the possibility of fraud in engrafting this exception upon the statute of frauds, it is settled, that the parol agreement relied on must be certain and definite in its terms: the acts proved in part performance must refer to, result from or be done in pursuance of the agreement: and the agreement must have been so far executed that a refusal of full execution will operate as a fraud upon the-party, and place him in a situation which does not'lie-in compensation. Wright v. Pucket, 22 Gratt. 370; Lead. Cases in Equity, 2 vol. 1052.
When these circumstances concur it is as much a matter of course for the equity courts to decree a specific execution as for the common law courts to award damages for the breach of a written contract. The pur *407 chaser is regarded as the real beneficial owner of the estate, and the vendor a mere trustee of the legal title for his benefit. Whatever loss may fall on the estate is the loss of the purchaser. Whatever advantage may accrue to it is bis gain. This doctrine is now too firmly settled ever to be changed by anything short of an express legislative enactment. It is to every intent a law of property, as much so as if the exception had been incorporated in the statute of frauds. Upon the faith of its existence, purchases of valuable estate have been made and held throughout this commonwealth. There can be no ground of controversy upon these points. It may be further affirmed that the title thus vesting in the purchaser under a valid parol contract, is good against all the world, except subsequent pur chasers of the legal title for valuable consideration without notice. I speak now without reference to the recording acts. That the equitable estate of the purchaser is good against creditors of the vendor is incontrovertible. It has been over and over again decided that the judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser; he has no equity whatsoever beyond what justly belongs to his debtor; his claim is to subject to his lien such estate as the former owns, and no more.
These principles have been time and time again announced by the courts of England, by this court, and by the supreme court of the United States, and by the *408 courts of many other states of the Union. See the eases cited by Judge Baldwin in Withers and Carter.
Brown v. Pierce 7 Wall. U S. R. 205; Rogers v. Bonner, 45 New York R. 379; Money v. Dorsey, 7 Smedes & Marsh. 15; Morton v. Robards, 4 Dana R. 258. Numerous other cases might be mentioned, but it is unnecessary.
The revisors of 1849 were men learned in the law; they were perfectly familiar with these principles. They could not but be aware that the question of the rights of purchasers under parol contracts would constantly arise in the courts. If they intended to make this fundamental revolution in the laws of property,- and utterly to annihilate, for the benefit of creditors, a large class of contracts universally recognized as valid, they certainly would have expressed their intention in plain and unmistakeable language. It is not reasonable to suppose they would have left a matter of so much importance to all the hazards of judicial-interpretation—an interpretation only to be reached by disregarding the plain words of the statute, and having no other foundation than a supposed public policy.
But we are told that every consideration, prompting the revisors to require the recordation of deeds and title bonds, applies more strongly to mere verbal agreements for the sale of lands. A little reflection will, I think, show that this is not true, certainly not to the extent asserted in the argument.
When the vendee has a deed or other written evidence of his purchase, there is no hardship in requiring him to place it upon the record. It is gross laches not to do so, which the legislature might well declare good ground of forfeiture. But in many cases the vendee has neither deed nor title bond. He is often deprived of one or both by the fraud of the vendor, *409 •or by his death or sickness, or by some controversy in regard to the precise terms of the contract; and at last not unfrequently he is compelled to resort to a court of equity for redress. Such cases are constantly occurring in every community. The books abound with them. To require that such contracts shall be recorded is simply to require an impossibility. It is to provide that one man’s property may be taken for another man’s debts, without the fault of the owner, and without the possibility of guarding against it by the exercise of the greatest diligence. It seems to be forgotten that •one of the reasons influencing the courts to engraft an •exception upon the statute of frauds in cases of parol •contracts partly performed was, that oftentimes the purchaser is kept out of his deed or other writing by the fraud of the vendor, or other circumstance beyond the control of the purchaser. Who can say that the •considerations which influenced the courts to engraft this exception upon the statute of frauds did not influence the legislature also to respect the same principle in the recording acts?
But in ascertaining the meaning of a statute it is sometimes important to find out the mischief to be corrected as well as the class to be protected. Who are the men to be most benefitted by this enlarged interpretation of the statute? Not purchasers, certainly. They are fully protected by the provision requiring the recordation of deeds and title bonds. When the contract is evidenced by a writing it is not necessary the purchaser shall take possession under his contract. Unless, therefore, the writing is recorded, in very many cases it is impossible that a subsequent purchaser can have any knowledge of the alienation. There is nothing to give him notice, or even to put him upon inquiry. It was very proper under such *410 cireumstances to require the registration of the deeds and of the written executory agreement, not necessarily accompanied with possession. But when the contract is merely in parol, possession of the property un(^er the agreement is indispensable. It must be a visible, notorious possession. Whether, under our recording acts, mere possession is sufficient to charge all persons dealing with the property with knowledge of all the equities of the tenant in possession, it is unnecessary now to decide, as no such question arises here. All agree that the notice must be such as to affect the conscience of the subsequent purchaser. Siter, Price & Co. v. McClanachan et als., 2 Gratt. 280. If the first purchaser is not in possession, he must have his deed or title bond, and the registry of them will give notice. If he is in the actual possession under a parol agreement as owner of the estate, that possession will generally be so notorious, so well understood, that, persons disposed to act in good faith will be rarely, misled by the absence of registration. It seems to me, therefore, that, so far as subsequent purchasers, are concerned, no such inconvenience will result as is. apprehended from holding that the statute does not extend to parol contracts; certainly none comparable to the mischiefs likely to arise from a contrary construction.
The same observation may be made in respect to-creditors. If acting in good faith, if not willfully closing their eyes to the true state of the title, they will rarely be misled in regard to the real ownership, of the property. As to them, certainly the old rule should prevail, that possession is notice of the equity of the party having such possession.
But our recording acts make no distinction between creditors with notice and creditors without notice. *411 The former, in this respect, stand upon higher grounds than subsequent purchasers. With us, the creditor, at the time he gives the credit, may know his debtor has sold the land, has received every dollar of the purchase money; he may see the purchaser in possession, claiming title, making costly and expensive improvements; he may know that the purchaser has been forced into a court of chancery to obtain the title withheld by the fraud or obstinacy of the vendor; he may know, as in this case, that the property is passing through successive alienations into the hands of innocent purchasers; all this he may know, and yet, if the construction now contended for be given to the statute, he may by means of a judgment against the vendor appropriate every acre of the property, every dollar expended upon it, to the payment of his debt. He cannot take a deed of trust or a mortgage, because he thereby becomes a purchaser, and as such he is infected with notice. But he can accomplish his object by a judgment, which confessedly gives a lien only upon that which belongs to the debtor. This is the class, and the only class, so far as I can see, that is to be benefited by this enlarged and liberal interpretation of the statute. The recording act's, I admit, are founded in wisdom and justice; but it by no means follows that every interest is to be made subservient to the policy of a registration system. It was said in the argument, that Virginia is the only state besides Mississippi, in which the right is conferred upon a creditor with notice of subjecting to his judgment the property in the hands of a bona fide purchaser. As the law is written, he must obey it. But, for one, I am not disposed to extend it one step beyond what is so written. If the rights of a large class of purchasers recognized by the law as valid are to be sacrificed *412 because of a failure to do an act so often impossible to be done, it must be by the declared will of the legislature, in clear and unmistakeable language. It is not to be done by any mere rules of interpretation, or by inferences or conjectures as to the intention of the legislature, founded upon a supposed public policy. Under all the difficulties surrounding this question, who is authorized to speak for the legislature outside of its expressed will? Who can say that the framers of the statute did not carefully consider all these matters, and after full consideration determine to leave parol contracts just as they were—unaffected by the recording acts?
It may be indeed, that they did not think of the matter at all; that the subject was not brought to their attention. If such.be the case, who can say what view they would have taken, had the question been before them. If the, conflict of opinion was as great then as it is now, it is a matter of impossibility to say what action they would have taken, or . whether they would not have left the subject precisely where it is. To whatever cause the omission, if such it be, is owing, the defect cannot be remedied by the courts. In .the language of Mr. Justice McLean, already quoted, “It is not for the courts, where the language of the statute is clear, to say that it shall be construed so as to embrace all cases, because no good reason can be •assigned why they were excluded .from its provisions.”
We are told, however, that although the statute may not in express terms apply to all contracts for the sale of land, it necessarily leads to that result. For, as is argued, whenever the parol contract is reduced to writing it becomes merged in the latter, and*ceases to operate as a parol contract; and when a deed is executed it satisfies and discharges the contract to convey.
*413 In the first place, eases are constantly occurring which rest alone upon the parol agreement partly performed, and no deed or other writing is or has been - executed when the creditor .brings his suit. In these cases the doctrine of merger can of course have no application; and the whole structure of the argument upon this point falls to the ground. In the next place there are other cases, and the present is one of them, where no deed is given until after the judgment is recovered; but the contract is made—the’ purchase money paid—the purchaser in possession and so remaining years anterior thereto. How if the title of the purchaser is good against the creditor when the judgment is recovered, can it be the title becomes invalid by reason of the subsequent execution of a deed by the vendor. The bare statement of the proposition is its own refutation. But let us take the strongest case, that of a valid parol contract so far executed as to pass the equitable title, and subsequently a deed of' conveyance, which is, however, not recorded, or if recorded at all, not until after a judgment recovered. This is the case-as presented in Withers v. Garter, except that there the contract was in writing, while here in the case supposed it is in parol. But the principle is the same. “Ho deed of conveyance (said Judge Baldwin) is necessary to. confirm its validity (the ex-ecutory agreement), and how an abortive attempt to-obtain a valid conveyance can destroy the preexisting title is beyond my comprehension. Hor can I conceive what merger there can be in regard to creditors, of the equitable estate in the legal title, by force of a deed which as to creditors is a blank piece of paper.” Long before this opinion of Judge Baldwin was written, the supreme court of Kentucky had announced the same view in the construction of their *414 acts taken from the Virginia statutes. In Morton v. Robards, 4 Dana R. 258, that court said, “It would be ■ strange to contend that the equity of a holder of a bond is good, yet if he attempted to consummate his legal title, but failed, that he forfeits that equity which he unquestionably could have held under his bond in case no attempt had been made.”
It will not be denied that these principles apply with equal force to a preexisting equitable estate acquired under a valid parol contract, as to one held under a written executory agreement. It may be conceded that when the parol agreement is connected with the deed and is contemporaneous with it, it must be regarded as forming part of the same transaction. In such case possession would perhaps be'considered as taken under the deed and as referrible to it. But where there is a parol agreement under which the purchaser takes possession, and which, of course, is valid without deed, no good reason is perceived why the subsequent execution of a deed should either invalidate the title thus acquired, or preclude proof of it in a proper case.
The principle of the law of estoppel is, that when parties make an agreement which is afterwards reduced to writing, the former is so far merged in the latter that parol evidence is inadmissible to establish a variance between them, or to contradict the legal import of the writing. But this rule can have no just application, where the verbal and written agreement •correspond in every particular, and the parol proof is offered, not to contradict but to sustain the written ■agreement. Mills v. Matthews, 7 Mary. R. 315. Whatever might be the difficulties in a court of law, a court of equity, which regards not the mere form, but the ■substance of things, will inquire into the real nature *415 •of the transaction, and limit the lien of the judgment to the actual interest of the debtor.
Before closing this opinion it is proper to add a few words in reference to the case of Withers v. Carter. It is impossible to deny that much of what is said in that case is equally applicable to the one before us. The reasoning which tends to show that under the laws in force prior to 1849, the unrecorded deed being ■a nullity, a written executory agreement was, nevertheless valid, because not affected by those laws, will equally show that a valid parol contract is now good against creditors, although never recorded, because it is not affected by the amendment incorporated in the •statute. See 2 Minor Ins. 1027. The counsel for the judgment creditors have felt this difficulty throughout. Accordingly they have not hesitated to assail the decision in Withers v. Carter and the reasoning upon which it was based. It is no part of my duty to vindicate that decision. True it was made by a court of three only; but no abler judges ever sat on this bench'; Judges Cabell, Allen and Baldwin. It was made nearly thirty years ago, and during all the time that has since elapsed, it does not appear to have been seriously controverted. The legislature very soon after changed the law; but the change applied only to future contracts, and left untouched many cases which were necessarily controlled by that decision. If any effort was ever made by the profession to have it reversed there is nothing to show it. The doctrines announced by Judge Baldwin have been repeatedly sanctioned by the highest tribunals in Kentucky and Mississippi in similar cases, and disputed by none that I have seen. We may safely, I think, adopt them as ■our guide in the present case. If the conclusion to which this court has arrived is erroneous, it is an *416 error in the interests of justice. The chief loss will be felt by creditors, ninetenths of whom were well ■ aware the property they seek to appropriate did not belong to their debtors, and they never gave credit upon the faith of any title in the latter. On the other hand it is impossible to estimate the mischief, the utter ruin which would follow, a contrary decision. In nearly every city and town, and in every county, there are, no doubt, houses and lands held by no other title than that arising under parol contracts, held for years without question, until the disasters of the war opened the floodgates of litigation. If there was ever an occasion in which the letter of a statute should be adhered to, it is in these cases. There is one other consideration which ought to have its influence. If we are to hold “ that every contract in respect to real estate” must be recorded, what is to be the effect upon those titles depending upon implied or resulting trusts,, which, though not in writing, are recognized and sanctioned by our laws. There is no need to discuss this question here, but it may well deserve the- attention of those who are so urgent for the policy of a “ universal registration.”
In whatever light we may consider the questioil, it seems to me it is safest to construe the statute accord-ing to its words, and to leave its defects to be remedied by the legislature. My opinion is, therefore, to reverse 'the decree of the circuit court of Bedford, and to dismiss the bill as to the appellant Ployd.
Moncure, P., and Christian, J., concurred in the opinion of Staples, J.”
The decree was as follows:
*417 The court is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in holding that the judgment set out in the plaintiff’s original bill constitutes a valid lien upon the tract of land conveyed by <J. M. W. Leftwich and wife to C. H. Turnbull by deed dated January 23d, 1867, and now in the possession of the appellants; and in directing that, unless the said judgment be paid by the appellants, the real estate in the amended bill mentioned, or so much thereof as was necessary, should be sold to pay the same. Therefore it is decreed and ordered, that the said decree be reversed and annulled, and that the appellee, John B. Harding, pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And this court proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and- ordered, that the plaintiff in the circuit court take nothing by his amended bill as to the appellant, but that it be dismissed as to him; that he go thereof without day and recover against the-said plaintiff his costs by him about his defense in that behalf expended in the said circuit court.
Which is ordered to be certified to the said circuit court of Bedford county.
Decree reversed.