FAIRFAX HOSPITAL SYSTEM, INC.

V.

DIANE M. NEVITT, ETC.

Record No. 940273

April 21, 1995

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ., and Poff, Senior Justice

*Anthony J. Trenga (John E. Coffey; Dee Ann Herring; Hazel & Thomas*, on briefs), for appellant.
*Dean E. Swartz (Swartz & Reed*, on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

In this appeal from a judgment for a plaintiff in a medical malpractice case, the issues framed require us to consider (1) the stat-

ute granting a plaintiff the right to settle with one tortfeasor without releasing joint tortfeasors, Code § 8.01-35.1, and (2) the interplay of the provision in that statute requiring a settlement credit against "any amount recovered against the other tortfeasors" and the statute commonly called "the medical malpractice recovery cap", Code § 8.01-581.15.

In September 1988, Diane M. Nevitt, born with tetralogy of fallot (openings between the chambers of the heart) and other congenital heart defects, underwent cardiac surgery in a hospital operated by Inova/Fairfax Hospital System, Inc. (the hospital). Following a cardiac arrest five days later, Nevitt sustained permanent paraplegia and other grievous injuries.

Alleging medical malpractice, Nevitt sued the hospital, Pediatric Cardiology Associates (PCA), Dr. Mohamed Mardini (a principal in PCA), and certain other defendants who are uninvolved in this appeal. Following settlement negotiations, Nevitt's attorney wrote a letter dated December 30, 1992 to counsel representing PCA and Mardini which stated in part:

> This letter is to memorialize the agreement reached today. Plaintiff has agreed to settle her claims against Pediatric Cardiology Associates in the amount of $600,000. She will dismiss her claims against Dr. Mardini. The settlement agreement and praecipe of settlement shall clearly reflect plaintiff's intention to proceed against the remaining defendants . . . pursuant to Virginia Code Section 8.01-35.1. After you have confirmed the agreement by sending me a return fax, I will inform the Court.

The next day, counsel for PCA and Mardini confirmed the agreement by sending Nevitt's counsel a facsimile copy of the "Joint Tortfeasor Release" approved by both attorneys. Since the agreement was reached on the eve of the New Year's holiday, counsel further agreed that consummation of the settlement would have to wait until the $600,000 check had been drawn and delivered.

Just before the jury was to be empaneled on January 4, 1993, attorneys for Nevitt, PCA, and Mardini announced to the court and to other counsel that one of the other judges of that court had entered an order earlier that morning that provided in part:

As EVIDENCED by the endorsement of counsel appearing below, plaintiff's claims against defendant Mohamed Mardini, M.D. are Dismissed with Prejudice. Plaintiff's claims against defendant Pediatric Cardiology Associates have been settled, pursuant to Virginia Code § 8.01-35.1, and are also Dismissed with Prejudice.
This cause continues against all remaining co-defendants.

Counsel for the hospital, previously unaware that the order had been entered, reserved the right to object on the ground that the order "may have some significance to my client's position as a joint tort-feasor under 8.01-35.1". The court declared that counsel had "sufficiently preserved" the rights of his client.

During the course of the trial, Nevitt accepted delivery of the settlement check and, on January 14, 1993, signed a copy of the "Joint Tortfeasor Release" agreed upon in December. On January 20, 1993, Nevitt recovered a jury verdict against the hospital for $2,000,000. Contending that Nevitt's settlement with PCA and Mardini had not been achieved in compliance with the requirements of Code § 8.01-35.1, the hospital filed a plea of release. The trial court overruled the plea and, on appeal, that ruling is the subject of the hospital's first assignment of error.

I.

At common law, a plaintiff's "release of one tortfeasor releases all joint tortfeasors." *Wright v. Orlowski*, 218 Va. 115, 120, 235 S.E.2d 349, 352 (1977). Enactment of the statutory ancestor of Code § 8.01-35.1 amended that rule by giving a plaintiff a right, under prescribed conditions, to settle selectively with some tortfeasors without forfeiting remedies against others. Issues related to such remedial rights are to be determined by the law prevailing at the time the cause of action accrued. *See Shiflet v. Eller*, 228 Va. 115, 123, 319 S.E.2d 750, 755 (1984). As it read when the tort in this case occurred, Code § 8.01-35.1 stated in pertinent part:

A. When a release . . . is *given in good faith* to one of two or more persons liable in tort for the same injury . . . :

1. It shall not discharge any of the other tort-feasors . . . unless its terms so provide; but any amount recovered against

the other tort-feasors or any one of them shall be reduced by . . . the amount of the consideration paid for it . . . . A release . . . *given pursuant to this section* . . . shall be considered by the court in determining the amount for which judgment shall be entered; and

2. It shall discharge the tort-feasor to whom it is *given* from all liability for contribution to any other tort-feasor.

B. A tort-feasor who *enters into* a release . . . is not entitled to recover by way of contribution from another tort-feasor whose liability for the injury . . . is not extinguished by the release . . . .

C. A release . . . *given pursuant to this section* shall be subject to the provisions of §§ 8.01-55 and 8.01-424.

D. This section shall apply . . . to all *releases executed* on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued.[1]

(Emphasis added.)

The hospital argues that, in order to avoid the effect of the common-law rule, Nevitt was required by this statute to subscribe "a written release before dismissing PCA with prejudice from the case." The hospital relies upon the words "releases executed" used in paragraph D of the statute to fix the date the section applies.

■ In our view, those words are not a mandate that a plaintiff sign a written release but merely a collective synonym for the several releases addressed in the preceding paragraphs of the statute, *i.e.*, a release "given in good faith", a release "given pursuant to this section", a release "given", and a release into which a party "enters".

The hospital also cites *Jones v. General Motors Corp.*, 856 F.2d 22 (4th Cir. 1988). There, the court held that an oral release of one tortfeasor did not comply with the requirements of the Virginia settlement statute and that a joint tortfeasor was released as at common law. *Jones* is factually inapposite.

---

[1] Subsection D of the statute was amended by Acts 1989, c. 681, to provide that it apply "to all . . . oral releases agreed to on or after July 1, 1989, provided that any cause of action affected thereby accrues on or after July 1, 1989." Nevitt's cause of action accrued in 1988.

As the court noted, "[t]here was apparently no writing memorializing the settlement . . . ." *Id.* at 23. Indeed, there was no writing at all until two and one-half years later when the plaintiff executed a written release, a document the court characterized as "invalid and not given in good faith." *Id.* at 25-26.

We think that the relevant precedent is our decision in *Fairfax Hospital System v. McCarty*, 244 Va. 28, 419 S.E.2d 621 (1992). There, the hospital contended, as it does here, that the plaintiffs had settled with some tortfeasors "upon an agreement for an oral release . . . which operated to release the Hospital from all claims." *Id.* at 37, 419 S.E.2d at 626. Finding that "[t]he consummated settlement was preceded by an agreement in principle memorialized by an exchange of letters setting forth the parties' understanding", we held that "[t]he release was given in accordance with § 8.01-35.1 . . . and the Hospital was not thereby released." *Id.*

■ Here, the settlement, consummated by delivery of the check and execution of the Joint Tortfeasor Release, "was preceded by an agreement in principle memorialized by" several writings, namely, the letter addressed by Nevitt's counsel to PCA's counsel; the copy of the written release later executed, unchanged, by Nevitt; and the order subscribed by counsel for Nevitt and PCA reciting that "[p]laintiff's claims against Pediatric Cardiology Associates have been settled, pursuant to Virginia Code § 8.01-35.1 . . . ."

■ Applying the reasoning in *McCarty*, we will affirm the trial court's ruling that Nevitt complied with the requirements of Code § 8.01-35.1 and that the hospital was not released.

## II.

We now consider the hospital's alternative assignment of error.

In the final judgment order, the trial court reduced the $2,000,000 jury verdict rendered against the hospital by $600,000 (the amount of the PCA settlement) and then reduced the remainder ($1,400,000) to the medical malpractice recovery cap ($1,000,000). The hospital contends that the court should have reduced the verdict to the amount of the statutory cap and then applied the statutory credit for the amount of the settlement to determine the quantum of the judgment. We look to the pertinent language of the two statutes.

Code § 8.01-581.15 provides:

*In any verdict* returned against a health care provider in an action for malpractice . . . which is tried by a jury *or in any judgment* entered against *a health care provider* in such an action which is tried without a jury, *the total amount recoverable for any injury to . . . a patient* shall not exceed one million dollars.

(Emphasis added.)

A portion of Code § 8.01-35.1, quoted earlier, provides that a release

given in good faith to one of two or more persons liable in tort for the same injury . . . shall not discharge any of the other *tort-feasors* . . . but [that] *any amount recovered* against the *other tort-feasors* or any one of them shall be reduced by . . . the amount of the consideration paid for it . . . . A release . . . given pursuant to this section . . . shall be considered by the court in determining *the amount for which judgment shall be entered* . . . .

(Emphasis added.)

As Nevitt says on brief, "the issue raised by the hospital has not been specifically addressed by this Court." In the process of statutory construction, we have consistently applied the following principles:

While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Floyd, Trustee v. Harding & als.*, 69 Va. (28 Gratt.) 401, 405 (1877); *accord, Turner v. Wexler*, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992); *Grillo v. Montebello Condominium Owners Assoc.*, 243 Va. 475, 477, 416 S.E.2d 444, 445 (1992); *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990); *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). If, in the application of these principles, the judiciary

misconstrues legislative intent, the General Assembly can correct the error. *See Sanitation Commission v. Chesapeake*, 218 Va. 696, 702, 240 S.E.2d 819, 823 (1978).

Construing the language of the statutory recovery cap in a recent case, we said that "in a medical malpractice action, the total damages recoverable for injury to a 'patient' are limited to the statutory amount, regardless of the number of legal theories upon which the claims are based." *Bulala v. Boyd*, 239 Va. 218, 228, 389 S.E.2d 670, 676 (1990). Two years later, we affirmed a judgment entered in the *McCarty* medical malpractice case where the trial court reduced a $1,250,000 verdict for an infant to the $1,000,000 statutory recovery cap and then applied the statutory credit for a $500,000 settlement made with one of the joint tortfeasors.

*Bulala* and *McCarty* are in full accord with the plain language of the two statutes in issue. The right of recovery to which the medical malpractice recovery cap is addressed is "the total amount recoverable for any injury to . . . a patient". The adjective "recoverable" modifies the words "total amount". What is "recoverable" is that which is capable of recovery. Hence, the mandate of Code § 8.01-581.15 is that in any judgment entered against a health care provider, the quantum of the recovery for a medical malpractice injury cannot exceed the aggregate amount capable of recovery.

Our interpretation of the recovery cap is reinforced by the clear import of the language in Code § 8.01-35.1. That statute expressly provides that "in determining the amount for which judgment shall be entered" against a defendant at trial, "any amount recovered . . . shall be reduced by . . . the amount of the consideration paid" in settlement with a joint tortfeasor.

The effect of the formula the trial court employed "in determining the amount for which judgment shall be entered" was to deny the hospital any credit for the PCA settlement.

In support of that formula, Nevitt contends that the hospital is not entitled to the benefit of that credit because PCA was not a health care provider under the definition of that term prevailing at the time of the settlement. We think that fact is wholly immaterial. The settlement credit mandate of Code § 8.01-35.1 does not require that a person who has been released be a health care provider. It requires only that such a person and the defendant health

care provider at trial be joint tortfeasors mutually liable for the same injury; PCA is such a joint tortfeasor.

■■■■■ We conclude that the plain meaning of the two statutes in issue, read together, is that where there is a verdict by a jury or a judgment by a court against a health care provider for "injury to . . . a patient" and the total amount recovered in that action and in all settlements related to the medical malpractice injury exceeds one million dollars, the total amount the plaintiff can recover for that injury is one million dollars.[2] Accordingly, we hold that the trial court erred when it failed to apply the $600,000 credit for the PCA settlement against the $1,000,000 statutory recovery cap in determining the quantum of Nevitt's judgment.

In summary, we will affirm the trial court's ruling that the hospital was not released from liability as a joint tortfeasor; we will reverse the judgment fixing damages against the hospital in the sum of $1,000,000; and we will enter final judgment for Nevitt in the sum of $400,000 with interest at the statutory rate from January 20, 1993.

*Affirmed in part,
reversed in part,
and final judgment.*

JUSTICE WHITING, with whom JUSTICE HASSELL and JUSTICE KEENAN join, dissenting.

I agree with the majority's disposition of the hospital's plea of release, but disagree with its application of the amount paid in settlement against the amount of the medical malpractice cap (the cap) instead of the amount of the verdict. I believe the majority's construction of the pertinent language of the two statutes is (1) illogical and inconsistent, and (2) contrary to the clearly expressed legislative purposes of each statute and the constitutional justification for the medical malpractice statute.

In dealing with the interplay between the cap in the medical malpractice statute and the settlement statute, the statutes must

---

[2] We think our conclusion promotes the public policy purpose of the Medical Malpractice Act which was designed to confront substantial problems of "escalating costs of medical malpractice insurance and the availability of such insurance . . . adversely affecting the health, safety, and welfare of Virginia's citizens." *Etheridge v. Medical Center Hospitals*, 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989) (construing Preamble to Act).

be applied in a manner consistent with their language and purposes. Here, the majority has applied the settlement credit statute, obviously intended to prevent a plaintiff from recovering more than the actual damages, to *reduce* a legislative cap, the amount of which is fixed without regard to those damages. And, in doing so, I think the majority uses the cap in a manner foreign to its purpose and consequent constitutional justification of fostering affordable medical malpractice insurance. *Etheridge v. Medical Center Hosps.*, 237 Va. 87, 93-94, 376 S.E.2d 525, 527-28 (1989).

In *Etheridge*, we said that this social purpose provided a rational and, therefore, constitutional basis for the cap. *Id.* at 100, 376 S.E.2d at 531. We further noted that "Code § 8.01-581.15 has no effect upon [a plaintiff's] right to have a jury or court render an individual decision based on the merits of the case." *Id.* at 99, 376 S.E.2d at 531.

In an apparent attempt to avoid this constitutional problem, the majority states that "the mandate of Code § 8.01-581.15 is that . . . 'in any *judgment* entered against a health care provider' the quantum of the recovery cannot exceed the aggregate amount capable of recovery." (Emphasis added.) Yet, the effect of the majority opinion is to put the cap on the verdict as well as the judgment, since it effectively reduces the verdict to $1 million *before* applying the settlement credit.

In support of its conclusion, the majority cites two cases in which the defendants (including the settling defendant, *Boyd v. Bulala*, 877 F.2d 1191, 1193 n.1 (4th Cir. 1989)) were *all* health care providers. *Bulala v. Boyd*, 239 Va. 218, 228, 389 S.E.2d 670, 675 (1990); *Fairfax Hospital Sys. v. McCarty*, 244 Va. 28, 419 S.E.2d 621 (1992). However, every defendant in those cases was entitled to the benefit of the cap, and no one plaintiff could have recovered more than $1 million in the aggregate against all the defendants in either case. *Etheridge*, 237 Va. at 105, 376 S.E.2d at 535 (single medical malpractice cap applied to defendants, *all* health care providers).

The issue here involves the amount received in settlement from a defendant which was *not* a health care provider.[1] And, in this

---

[1] I do not agree with the hospital's contention that PCA should be treated as a health care provider because its "settlement was, in fact, clearly for the benefit of [Dr. Mardini], who, as part of the settlement that had been agreed to, was . . . dismissed with prejudice along with PCA." The hospital recognized in the trial court that the record might not have provided sufficient support for this contention. Hence, in a memorandum filed with the trial

case, the jury's "individual decision on the merits of the [plaintiff's] case [for damages]" was that she was entitled to recover $2 million. The majority regards the fact that PCA was not a health care provider as "wholly immaterial" since "[t]he settlement credit mandate of Code § 8.01-35.1 does not require that a person who has been released be a health care provider." Even if this were a proper construction and application of that statute in this case, I think that this application of the cap *before applying the credit* effectively deprived the plaintiff of her *Etheridge*-articulated constitutional right to have a jury make an individual decision based upon one of the most important elements of the case—the quantum of damages. Accordingly, I consider this ruling an unconstitutional construction and application of the statute.

And since I believe the majority effectively bases its reasoning upon the premise that no verdict could have been returned against a health care provider in excess of the cap or "total amount recoverable," it decides an issue the hospital did not raise in the trial court. Accordingly, I do not think that we should consider it on appeal.[2] Rule 5:25. The fact is that a $2 million verdict was returned against the hospital. Hence, the issue framed in the trial court and this Court is how the settlement amount should be credited against that verdict. Thus, under the facts and issues presented in this case, I think the trial court correctly applied the $600,000 settlement against the $2 million verdict and properly reduced the resulting amount to the $1 million cap.

Further, even if the issue had been properly raised, I would not apply the cap as the starting point for the calculation, as the majority has done. In my view, an application of the language of the medical malpractice statute to reduce a verdict against a health care provider to $1 million *before* applying the settlement credit "is simply illogical and is not within the contemplation of the . . . statutory provisions dealing" with the cap and the settlement

court in support of its motion to reconsider, the hospital asked for "the opportunity to present evidence to establish further the rather logical and reasonable proposition" that the dismissal of Dr. Mardini with prejudice was the "*quid pro quo*" for PCA's payment and release. However, the record fails to indicate that the hospital pursued this request. I would conclude that the record is insufficient to show, as a matter of law, that PCA's settlement was on Dr. Mardini's behalf.

[2] On appeal, as an additional ground for the initial reduction of the verdict to $1 million, the hospital also argues that this was the amount of the plaintiff's *ad damnum* claim against it in the pleadings. I would not consider this argument since it was not made in the trial court. Rule 5:25.

credit provisions. *DKM Richmond Associates v. City of Richmond*, 249 Va. 401, 408, 457 S.E.2d 76, 80 (1995) (this day decided) (rejecting taxpayer's contention regarding statute).

I agree with the majority's statement of the applicable standard of statutory construction in this case. However, I disagree with its conclusion that a literal construction of the two statutes requires the majority's result. Even if the majority's literal construction required this result, I respectfully suggest that, in the language of the standard quoted by the majority, such "a literal construction would involve . . . manifest absurdit[ies]." Some of them are:

1. If the plaintiff had not settled with PCA, under the majority's rationale she could have collected the $2 million verdict since PCA would have been liable for that amount. As a practical matter, the plaintiff probably would have collected $1 million from each of the joint tortfeasors with the hospital receiving no credit for the $1 million payment by PCA. Since the plaintiff settled with PCA, the majority penalizes the plaintiff by giving the hospital full credit for PCA's payment.

Obviously, future plaintiffs in similar situations will not settle their cases and be subjected to such a penalty. I think the majority's decision (a) is contrary to the settled principle of law "favor[ing] compromise and settlement of disputed claims," *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995) (this day decided), and (b) defeats one of the primary purposes of the settlement statute—that of encouraging settlements and a fair distribution of the burden of the damages among the joint tortfeasors. And, contrary to the majority, I think that the reduction of the recovery to an amount *below* the cap is a judicial, not a legislative, promulgation of a public policy.

2. As noted earlier, the majority misconstrues and misapplies these two statutes in a manner contrary to their primary purposes by deducting a settlement amount geared to the plaintiff's individual damage claim from an arbitrary cap on recoveries against health care providers (a social purpose having nothing to do with the plaintiff's individual claim for damages).

3. The majority does not explain how and why these statutes, *read together*, require the cap to be applied before crediting the settlement. Instead, the majority simply applies the settlement credit statute, Code § 8.01-35.1, to the amount of the verdict because it says that this statute requires only that the settling and

nonsettling parties be joint tortfeasors, with no requirement that the settling party be a health care provider.

In my opinion, these statutes, read together, create ambiguities and inconsistencies requiring us to consider the legislative purpose in enacting each statute. *See USAA Cas. Ins. v. Alexander*, 248 Va. 185, 194, 445 S.E.2d 145, 150 (1994). Since the majority ignored those purposes in construing these statutes, it has applied the settlement credit statute in a manner incompatible with the purposes of both statutes.

In sum, I do not think that the language of Code § 8.01-581.15 compels a jury or court to impose the cap *before* considering the amount of damages to which the plaintiff would otherwise be entitled. Rather, I believe this code section can be read to put "a cap" on the "total amount recoverable" so that the quantum of the recovery against health care providers in the final judgment will not exceed the cap. I think the use of the words "*total* amount *recoverable*" (emphasis added) manifests a legislative intent to apply the medical malpractice cap *after a calculation* of all appropriate adjustments to whatever amount a jury or a court concludes should be awarded to the plaintiff-patient, based upon the merits of her damage claim. In my opinion, this application of the language is consistent with the medical malpractice statute's clearly expressed purpose and underlying constitutional justification of fostering medical malpractice insurance at affordable rates. *See Bulala*, 239 Va. at 227-28, 389 S.E.2d at 674-75 (clear expression of statutory purpose); *Etheridge*, 237 Va. at 99-100, 376 S.E.2d at 531 (constitutional justification).

Here, in applying the language of each statute in harmony with the purposes of both statutes, I would avoid the majority's illogical and inconsistent construction by concluding that those purposes are fully served by (1) crediting the liability the hospital would have had were it not a health care provider with the amount of the settlement, thereby reducing the verdict to $1,400,000, (2) further reducing that amount to the cap, the "total amount recoverable" in a medical malpractice action, and (3) entering judgment for that amount.

Accordingly, I would affirm the judgment across the board.