## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax Radiological
Consultants, P.A.

v.

My Q. Bui

August 16, 2002

Case No. (Law) 199570

BY JUDGE R. TERRENCE NEY

This matter came before the Court on Defendant's Plea of Discharge. The issue presented is one of first impression in Virginia.

### Background

This case is a contribution claim arising out of earlier medical malpractice claims against both parties. Fairfax Radiological Consultants, P.A. ("Fairfax Radiological") seeks contribution from My Q. Bui, M.D., for a judgment awarded against it in the earlier case. The facts in the underlying case largely form the basis for the instant action.

Jose and Rosa Benitez, individually and as administrators of the Estate of Isilma Benitez ("the Benitez family"), filed two actions in this Court against Fairfax Radiological and Bui. The gravamen of both cases was that the defendants (and two other doctors not relevant to this action) were negligent in not timely diagnosing a dangerous heart condition in five-month old Isilma Benitez. In the case of Fairfax Radiological, the specific allegation was that

one of its doctors misread a x-ray and thereby missed a crucial diagnosis. As a result, Isilma Benitez suffered cardiopulmonary arrest on May 10, 1995, and remained in a near vegetative state until her death in October 2000. The Court consolidated the cases for trial.

On the eve of trial, Bui settled with the Benitez family. The settlement came as the result of mediation between the Benitez family and Bui. A local attorney with extensive medical malpractice experience served as the mediator. Fairfax Radiological had declined to participate in prior settlement negotiations and was not invited to participate in the mediation.

On the morning of trial, Bui was nonsuited from the case and the trial went forward only against Fairfax Radiological. In a separate case (L196130) filed after the nonsuit, the Court approved the compromise settlement between the Benitez family and Bui by Order dated June 8, 2001. The jury granted judgment in favor of the Benitez family and against Fairfax Radiological in the amount of $987,777.43.

Fairfax Radiological now seeks contribution from Bui for $493,388.71 on the grounds that it was Bui's negligence that proximately caused the death of Isilma Benitez. Bui's Plea of Discharge followed.

### The Parties' Positions

Bui argues that, because he was released in good faith, pursuant to the terms of a compromise settlement approved by the Court, he is not subject to a claim for contribution. Bui contends that the agreement at issue is a "high-low" agreement of the kind permitted by statute. Virginia Code § 8.01-35.1(C) provides as follows:

> For the purposes of this section, a covenant not to sue shall include any "high-low" agreement whereby a party seeking damages in tort agrees to accept as full satisfaction for any judgment no more than one sum certain and the party or parties from whom the damages are sought agree to pay no less than another sum certain regardless of whether any judgment rendered at trial is higher or lower than the respective sums certain set forth in the agreement and whereby such party provides notice to all of the other tortfeasors of the terms of such "high-low" agreement immediately after such agreement is reached.

Bui argues that Fairfax Radiological could not refuse to negotiate, take the case to a losing verdict, and then seek contribution from the settling party. Such a result would be contrary to the very purpose of Va. Code § 8.01-35.1.

A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tortfeasors from liability for the injury, property damage, or wrongful death unless its terms so provide; but any amount recovered against the other tortfeasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater. In determining the amount of consideration given for a covenant not to sue or release for a settlement which consists in whole or in part of future payment or payments, the court shall consider expert or other evidence as to the present value of the settlement consisting in whole or in part of future payment or payments. A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered; and

2. It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

B. A tortfeasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tortfeasor whose liability for the injury, property damage, or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tortfeasor which is in excess of what was reasonable.

C. For the purposes of this section, a covenant not to sue shall include any "high-low" agreement whereby a party seeking damages in tort agrees to accept as full satisfaction for any judgment no more than one sum certain and the party or parties from whom the damages are sought agree to pay no less than another sum certain regardless of whether any judgment rendered at trial is higher or lower than the respective sums certain set forth in the agreement and whereby such party

provides notice to all of the other tortfeasors of the terms of such "high-low" agreement immediately after such agreement is reached.

D. A release or covenant not to sue given pursuant to this section shall be subject to the provisions of §§ 8.01-55 and 8.01-424.

E. This section shall apply to all such covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980. This section shall also apply to all oral covenants not to sue and oral releases agreed to on or after July 1, 1989, provided that any cause of action affected thereby accrues on or after July 1, 1989. A release or covenant not to sue need not be in writing where parties to a pending action state in open court that they have agreed to enter into such release or covenant not to sue and have agreed further to subsequently memorialize the same in writing.

Virginia Code § 8.01-35.1.

According to Bui, the purpose of § 8.01-35.1 is to allow and encourage partial settlements where there are multiple tortfeasors without preventing plaintiffs from pursuing claims against the recalcitrant, non-settling tortfeasors. Bui characterizes Fairfax Radiological as the classic recalcitrant tortfeasor.

Bui maintains that the Settlement Agreement is the product of a good faith, arms-length transaction between the Benitez family and Bui. Bui notes that the burden is on Fairfax Radiological to show by clear and convincing evidence that the agreement was made in bad faith. Bui asserts that Fairfax Radiological cannot carry this burden. Bui contends that there is no proof that the parties were not honestly trying to settle the case. Bui contends that good faith does not prohibit a low or conservative settlement, nor does it prevent a settlement that results in a tactical gain for one party. Bui notes that the Court approved the settlement agreement and that the terms of the settlement agreement itself rebut any suggestion of a bad faith settlement. Finally, Bui notes that Fairfax Radiological knew and understood the terms of the settlement agreement before the trial against Fairfax Radiological began.

Fairfax Radiological contends that the settlement agreement was not a good faith agreement as to its interests and, therefore, Bui is not entitled to the statutory protection § 8.01-35.1 affords. Fairfax Radiological asserts that the settlement agreement created a situation in which it had to either settle the case for a minimum of $325,000 or go to trial.

In addition to the $50,000 Bui paid immediately to the Benitez family, the following other terms were part of the settlement agreement:

> If the jury awarded $600,000 or more, Bui would be completely discharged;
> Bui would pay the difference between any jury award and $600,000 to the Benitez family (in other words, the Benitez family would not recover less than $600,000 if the jury awarded judgment in their favor);
> If Fairfax Radiological won, Bui would pay the Benitez family an additional $650,000; and
> If Fairfax Radiological settled with the Benitez family, Bui would pay an additional $325,000 to the Benitez family.

*See* Release and Settlement Agreement ¶ 16.

According to Fairfax Radiological, the settlement agreement actually fomented litigation because the Benitez family had no incentive to settle for anything less than $325,000 from Fairfax Radiological, because, even if they lost at trial, they were guaranteed $700,000 by Bui.

Fairfax Radiological asserts that the agreement was collusive in that it circumvented the statutory prohibition against contribution claims by settling tortfeasors. By the agreement, Bui guaranteed the Benitez family payment to an upper limit of $700,000. Bui would receive credits against that amount according to the contingencies set out in the agreement. As Fairfax Radiological sees it, the problem with the contingencies is that they, in effect, amounted to contribution to Bui from Fairfax Radiological. Finally, Fairfax Radiological contends that the present claim seeks merely to place Bui in the position that he has always contemplated he would be in, namely liable for his proportionate share of the Benitez family's damages.

## Analysis

### Burden of Proof

"Analysis begins with the presumption that the settlement has been made in good faith, and the burden is on the challenging party to show that the settlement is infected with collusion or other tortious or wrongful conduct." *Dacotah Marketing and Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570, 578 (E.D. Va. 1998); *see also Smith v. Monongahela Power Co.*, 429 S.E.2d 643 (W. Va. 1993) ("Settlements are presumptively made in good

faith. A defendant seeking to establish that a settlement made by a plaintiff and a joint tortfeasor lacks good faith has the burden of doing so by clear and convincing evidence."). Accordingly, the burden is on Fairfax Radiological to show that the Benitez-Bui settlement agreement was not a good faith settlement.

### Settlement Agreements

"At common law, a plaintiff's `release of one tortfeasor releases all joint tortfeasors.' Enactment of the statutory ancestor of Code § 8.01-35.1 amended that rule by giving a plaintiff a right, under prescribed conditions, to settle selectively with some tortfeasors without forfeiting remedies against others." *Fairfax Hospital System v. Nevitt*, 249 Va. 591, 594, 457 S.E.2d 10, 12 (1995) (quoting *Wright v. Orlowski*, 218 Va. 115, 120, 235 S.E.2d 349, 352 (1977)). *See generally,* Linda F. Rigsby, Comment, "The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Tortfeasors," 14 *U. Rich. L. Rev.* 809 (1980). The statute provides, in part, that:

When a release or a covenant not to sue is given *in good faith* to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tortfeasors from liability for the injury, property damage, or wrongful death unless its terms so provide; but any amount recovered against the other tortfeasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater. In determining the amount of consideration given for a covenant not to sue or release for a settlement which consists in whole or in part of future payment or payments, the court shall consider expert or other evidence as to the present value of the settlement consisting in whole or in part of future payment or payments. A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered; and

2. It shall discharge the tortfeasor to whom it is given from *all* liability for contribution to any other tortfeasor.

Virginia Code § 8.01-35.1(A) (emphasis added). "Under [the] statute, therefore, a settlement agreement will relieve the settling tortfeasor of his duty to make contribution to the other tortfeasors only if the agreement was entered into in good faith." *In re Waverly Accident of February 22-24, 1978*, 502 F. Supp. 1, 3 (M.D. Tenn. 1979) (applying Tennessee statute with the same operative provisions as § 8.01-35.1).

## Good Faith

There is no controlling Virginia case that defines what the "good faith" requirement is under § 8.01-35.1. *See Dacotah Marketing and Research, L.L.C. v. Versatility, Inc.*, 21 F. Supp. 2d 570 (E.D. Va. 1998) (noting that the issue of the good faith required by § 8.01-35.1 is "an unsettled question of Virginia law."). Other courts examining this question,[1] however, have held that a good faith settlement agreement is one that "is the product of an arm's length negotiation untainted by collusion or other tortious or wrongful conduct." *Dacotah*, 21 F. Supp. 2d at 577; *see also, Waverly*, 502 F. Supp. 1 (holding a settlement agreement to be the product of bad faith because it was collusive); *Stubbs v. Copper Mountain, Inc.*, 862 P.2d 978 (Colo. App. 1993) (adopting the collusion rule). *But see In re Guardianship of Babb*, 642 N.E.2d 1195 (Ill. 1994) (applying a totality of the circumstances test); *Monongahela Power Co.*, 429 S.E.2d at 651 (adopting a hybrid collusion rule and noting that "a bald 'tortious conduct' approach might pose a burden so great as to impair substantially the right of a non-settling joint tortfeasor to receive a fair trial."); *International Action Sports, Inc. v. Sabellico*, 573 So. 2d 928 (Fla. App. 1991) (agreement is not in good faith if it does not promote the statutory goals of "a fair distribution of the rights and obligations of the responsible parties and the encouragement of settlements.").

Other reviewing courts have held that the good faith requirement is as to the non-settling tortfeasor. *See International Action Sports*, 573 So. 2d at 930 ("[T]he act requires that the settling parties act in good faith with respect to the non-settling ones."); *see also Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210 (9th Cir. 1981) ("Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith *with respect to them*.") (emphasis added).

---

[1] Section 8.01-35.1 "derives from § 4 of the Uniform Contribution Among Tortfeasors Act (UCATA), and hence the interpretation of § 4 in the states that have adopted it is instructive." *Dacotah*, at 575.

## Defendant's Plea of Discharge

At the hearing, the parties agreed that the appropriate rule for this Court to apply is the collusion rule. Here, the question of good faith appears to turn on whether or not the settlement agreement was impermissibly collusive, whether by design or operation.

As to collusion by design, "[a]ny negotiated settlement involves cooperation, but not necessarily collusion. It becomes collusive in this context when it is aimed to injure the interests of an absent tortfeasor." *Stubbs*, 862 P.2d at 984 (upholding a "Mary Carter" settlement because such loan agreements are permitted under Colorado law).[2] Similarly, there is no good faith "where the sole object is to defeat other tortfeasors' potential contribution claims." *Babb*, 642 N.E.2d at 1199 (invalidating a "Mary Carter" agreement).

Here, *all* of the witnesses testified that they were earnestly and honestly attempting to settle the case and that it was the mediator, not the parties, who ultimately suggested the final form of the agreement. In addition, each of the witnesses testified unequivocally that there were no agreements made which were designed to prejudice Fairfax Radiological's defense of the claims against it.

The Court finds this testimony and evidence credible and persuasive. The Court therefore concludes that there was no collusion between the settling parties to injure Fairfax Radiological. Indeed, Fairfax Radiological conceded at the hearing that there was no collusion "in fact." Rather, Fairfax Radiological focuses on the legal *effect* of the agreement, collusion "in law." There are no reported cases using the term "collusion in law." The Court adopts it as best describing the effect urged by Fairfax Radiological, namely, a collusive result not necessarily intended by the settling parties.

Fairfax Radiological relies on the decision in *Waverly*, 502 F. Supp. 1 (M.D. Tenn. 1979), in making its collusion argument. In *Waverly*, the court was presented with a situation similar to the one here, the settling tortfeasor guaranteed the plaintiff $100,000 but only paid $33,000 initially and required

---

[2] A "Mary Carter" agreement is one where "the settling tortfeasor's obligation to pay any money is contingent upon plaintiff's failure to obtain a judgment in a certain amount against other tortfeasors." *In re Waverly Accident of February 22-24, 1978*, 502 F. Supp. 1, 3 (M.D. Tenn. 1979). Annot., 65 A.L.R. 3d 602 (1975). There is no reported Virginia authority which addresses a "Mary Carter" agreement.

the plaintiff to pursue her claims against the other two tortfeasors. Sums received from those parties would then be credited against the $100,000 guaranteed payment. The *Waverly* court held that the agreement was impermissibly collusive because it effectively resulted in contribution from the non-settling tortfeasors. *Waverly*, however, is not entirely dispositive. Specifically, there were other collusive elements to the agreement that troubled the *Waverly* court that are not present in this case. The *Waverly* plaintiff could not settle with other tortfeasors without the settling tortfeasor's express consent, and, more importantly, the claimant had to continue the litigation against the other parties or forfeit the guarantee of payment. In addition, the case actually went forward against the settling party, which the court viewed as a type of fraud on the trial court. *See Waverly*, 502 F. Supp. at 6.

Here, the Benitez family remained in full control of the litigation. Bui was non-suited from the case and so there was no co-defendant present who might attempt to sabotage the trial. Neither could there have been any confusion, misrepresentation, or a fraud on the Court or the jury regarding Bui's status. Finally, Bui, unlike the situation in *Waverly*, did not reserve any right to veto a potential settlement between the Benitez family and Fairfax Radiological. To the contrary, Mr. Brian Rhatigan, counsel for Bui, testified that he told Fairfax Radiological's counsel during the course of the trial that Fairfax Radiological "could still get out of this [case]." Mr. Rhatigan explained this observation from his experience after years of law practice that Fairfax Radiological might prevail and Bui then be required to pay the full $700,000. This comment too does not connote any bad faith or ill will towards Fairfax Radiological. If anything, it is quite to the contrary. Fairfax Radiological remained unwilling to settle. Yet Benitez could settle if it wished and was not required to continue the litigation.

Yet did the agreement here indirectly force contribution from Fairfax Radiological to Bui, notwithstanding that the agreement did not discharge Fairfax Radiological's liability, in contravention of the statute? Or was the agreement merely a "high-low" agreement of the type permitted under the statute?

Section 8.01-35.1 bars the settling party from seeking contribution from the non-settling joint tortfeasor whose liability is not extinguished by the agreement.

A tortfeasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tortfeasor whose liability for the injury, property

damage, or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tortfeasor which is in excess of what was reasonable.

Virginia Code § 8.01-35.1(B). So-called "high-low" agreements, however, are permitted.

For the purposes of this section, a covenant not to sue shall include any "high-low" agreement whereby a party seeking damages in tort agrees to accept as full satisfaction for any judgment no more than one sum certain and the party or parties from whom the damages are sought agree to pay no less than another sum certain regardless of whether any judgment rendered at trial is higher or lower than the respective sums certain set forth in the agreement and whereby such party provides notice to all of the other tortfeasors of the terms of such "high-low" agreement immediately after such agreement is reached.

Virginia Code § 8.01-35.1(C).

The real problem here is that the high-low agreement between the Benitez family and Bui is not a traditional high-low agreement. Bui guaranteed to the Benitez family that, regardless of what happened at trial, the Benitez family would receive at least $600,000, or as much as $700,000 if Fairfax Radiological prevailed at trial. Yet there were contingencies affecting Bui's liability for these payments. A jury verdict in excess of $600,000 extinguished as to him any further responsibility for payment. A jury verdict for less than $600,000 required him to make up the difference. A Fairfax Radiological settlement with the Benitez family called for Bui to pay $325,000.

This is what gives the agreement its Mary Carter aspect. The higher the verdict, or settlement with Fairfax Radiological, the lower the payment from Bui. This is exactly the reverse of most high/low agreements. Although the settlement agreement is urged as a classic high-low agreement, it is really a guarantee agreement, the only real high-low aspect being as with the amount of funding provided by Bui dependent on the liability of not himself, but another party, namely Fairfax Radiological. Does this amount to contribution by a non-settling tortfeasor, Fairfax Radiological, to a settling tortfeasor, Bui, because Bui's ultimate obligation is determined by Fairfax Radiological's exposure?

Although the agreement may facially appear to contain elements of contribution, it is not true contribution. It is an apportionment of risk by Bui, the extent of which results solely from Fairfax Radiological's decision not to settle. Fairfax Radiological elected to take its chances with the jury. It gambled and lost. Fairfax Radiological "cannot now justifiably complain because in retrospect, it appears that [it] made the wrong decision." *Wheeler v. Denton*, 175 S.E.2d 769, 770-71 (N.C. 1970). The Court holds that the settlement agreement here is a species of high-low agreement which, if the statute does not envision, it neither prohibits. The settling parties agreed that Bui would pay a minimum of $50,000 (the low) and a maximum of $700,000 (the high) to the Benitez family for their damages. To this extent, as with any other high-low agreement, the final sum due from Bui was then in the hands of the jury, unless Fairfax Radiological chose to settle. If Fairfax Radiological had chosen to settle, Bui would in fact have contributed more to the total settlement sum. Whether Bui paid all or part of that rested with Fairfax Radiological or the jury.

Additionally, Fairfax Radiological did not "contribute" anything to Bui. Fairfax Radiological paid the Benitez family exactly what the jury awarded. Had the jury awarded less, or nothing, Bui would have had to pay more. But the decision as to what Fairfax Radiological would pay the Benitez family rested first with Fairfax Radiological and then with the jury. In either case, Fairfax Radiological did not pay Bui anything.

Fairfax Radiological complains that it "had" to try the case. This contention is somewhat disingenuous because Fairfax Radiological *never* tried to settle the case. Had Fairfax Radiological offered money to settle the case but was unsuccessful, then this complaint might ring truer. Here it does not.

Fairfax Radiological also urges that the settlement should be proportional. Perhaps it would have been had Fairfax Radiological settled with the Benitez family for $325,000. Bui's share then would have been $375,000. Yet Fairfax Radiological never tried to settle. The disporportionality of the payments results from the decision of Fairfax Radiological to gamble with a jury. Such an uneven distribution of liability is clearly contemplated and permitted by the statute. Were it otherwise, there would be no need for the bar on contribution from the settling party.

Fairfax radiological cannot have it both ways. What it really wishes to do is first take its chances with the jury, and then, if unsuccessful, shift a "proportional" burden of the judgment. Had Fairfax Radiological been successful with the jury, Bui's obligation would hardly have been proportional to that of Fairfax Radiological. Fairfax Radiological cannot expect from Bui now what it would have been unwilling to provide Bui previously.

The settlement agreement here was the result of a good faith arm's length negotiation. There was plainly no collusion by design. Neither was there collusion by operation of law. To permit this case to proceed would undermine the clear dictate of § 8.01-35.1. Accordingly, the Plea of Discharge is sustained and the case is dismissed with prejudice.