## Richmond

# HAMPTON ROADS SANITATION DISTRICT COMMISSION v. CITY OF CHESAPEAKE

January 13, 1978.

Record No. 761284.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Joseph J. Lawler (Kellam, Pickrell & Lawler*, on brief), for appellant.

*Ronald S. Hallman, Deputy City Attorney (Vernon T. Forehand, City Attorney*, on brief), for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

The city of Chesapeake (city) instituted this declaratory judgment proceeding against the Hampton Roads Sanitation District Commission (HRSD) asking the court below to declare that HRSD is obligated to pay the cost of relocating its sewer main situated in Indian River Road, a public street in the city. The relocation was necessitated by the city's improvements to the street.

While the action was pending, the parties agreed, without prejudice to the rights of either, to the entry of an order which provided that HRSD would let a contract for the work of relocating the main; that payment would be made by the city to the contractor as the work was approved by HRSD; and that the court would determine which of the two parties would ultimately bear the cost of relocating the line.

The trial court, after hearing evidence *ore tenus* without a jury, in a letter opinion held that HRSD was legally obligated to pay the cost of relocating its sewer main. Accordingly, it ordered that the city recover from HRSD the sum of $26,630.26, the agreed cost of the relocation work.

The parties agreed that the Commonwealth has control of the streets and highways within its borders and the legislature had the power and authority to grant HRSD the right to place its sewer lines in, or along and under the streets of the city; and that the legislature had delegated to the city the power to lay out and improve its streets.

HRSD is a political subdivision of the Commonwealth. It was created and organized under the Sanitation Districts Law of 1938. Acts 1938, c. 335 at 510. Subsequently, the legislature

validated the creation and organization of the Hampton Roads Sanitation District Commission. Acts 1960, c. 66 at 69.

Section 10(k) of the 1960 Act at 73, which is quite similar to the language of § 13 of the 1938 Act at 523, authorizes and empowers HRSD:

"to construct and operate trunk, intercepting or outlet sewers, sewer mains, laterals, conduits or pipelines in, along or under any streets, alleys, highways or other public places within or without the District; in so constructing its facilities, it shall see that the public use of such streets, alleys, highways, and other public places is not unnecessarily interrupted or interfered with and that such streets, alleys, highways and other public places are restored to their former usefulness and condition within a reasonable time; to this end the Commission shall cooperate with the State Highway Commission and the appropriate officers of the respective counties, cities and towns having an interest in such matters;..."

The evidence shows that in 1965 HRSD installed the line in question within the limits of the right-of-way of Indian River Road. Thereafter, it became necessary for the line to be relocated to facilitate street improvements by the city acting jointly with the Virginia Department of Highways, and HRSD refused to pay the cost of relocating the line based on its interpretation of § 10(k).

Frank H. Miller testified that he was Chief Engineer of HRSD from 1949 until his retirement in November 1971, and after 1958 he had the additional duties of General Manager for the remainder of his service. He stated that at the time of his retirement ten cities and counties in the Tidewater area were a part of the sanitation district. Testifying purely from memory, Mr. Miller stated that during the time of his service with HRSD, he would estimate it was necessary on 75 to 100 occasions to adjust and/or relocate their sewer lines to accommodate street and highway improvements. On some of those occasions, the relocation work was for the most part routine and did not require any great expenditures, and in the spirit of cooperation HRSD bore the cost of relocation. He stated, however, that in most instances the cost of relocating HRSD's sewer lines was borne by the city affected. After 1960, it was necessary to relocate more HRSD lines because the system became older and

improvement of streets became more frequent. He cited instances in which the costs of relocation of HRSD lines were absorbed in the street construction contracts at no cost to HRSD.[1] Another instance cited involved the lowering of the district's forced main in Simpson Street in the city of Norfolk to accommodate a drainage culvert. Mr. Miller said he believed that "work was done by us and paid for by the city." He also said that he "believed" the city of South Norfolk before it became a part of the city of Chesapeake paid for the relocation of some of HRSD's lines occasioned by street improvements.

Maurice Person testified that he had been connected with HRSD since 1961, and his testimony relating to payment of relocation costs of sewer lines occasioned by required changes in streets and highways would be substantially the same as Mr. Miller's.

B. J. Boyd testified that he had been employed in the Public Works Department of the city since 1962 or 1963, and prior to that time he was construction inspector for the Virginia Department of Highways. He stated, to his knowledge the city had never paid for the relocation of any of HRSD's sewer lines occasioned by improvements of the city's streets.

HRSD contends that the legislature in granting it the right to "construct and operate" its sewer lines in city streets imposed upon it under the provisions of § 10(k) of the 1960 "enabling act" only the duties to "see" that the public use of the streets was not unnecessarily interrupted; that the streets would be restored to their former usefulness and condition; and that it cooperate with the appropriate city officials in the premises. Thus, HRSD argues that under this grant by the legislature, it was reasonable to conclude that if the legislature had intended the use of the streets by HRSD embraced an additional duty to bear the cost of relocating its facilities necessitated by street improvements, appropriate language would have been added to make such duty clear. We do not agree.

---

1. It is not clear whether those instances involved construction or improvements to the Interstate Highway System located in cities, towns and counties. Under Code §§ 33.1-55(a) and 33.1-56, costs of relocating utility facilities in interstate highways shall be paid by the State Highway Commission as a part of the cost of the project. *See PEPCO* v. *Highway Commissioner*, 211 Va. 745, 180 S.E.2d 657 (1971); *Potomac Elec. Power Co.* v. *Fugate*, 341 F. Supp. 887 (E.D..Va.), *aff'd*, 409 U.S. 943 (1972).

■ In the absence of a statute or an agreement to the contrary, Virginia, like most jurisdictions, adheres to the common-law rule that a public utility is required to relocate and/or adjust at its own expense its facilities located in public streets and highways when such relocation and/or adjustment is necessary to facilitate street and highway improvements. *PEPCO* v. *Highway Commissioner, supra,* 211 Va. at 748, 180 S.E.2d at 659; *Anderson* v. *Water Co.,* 197 Va. 36, 44-45, 87 S.E.2d 756, 762 (1955). *See New Orleans Gas Light Co.* v. *Drainage Comm. of New Orleans,* 197 U.S. 453, 459, 460-61 (1905); *State Highway Dept.* v. *Roberts,* 42 Del. Ch. 486, 493, 215 A.2d 250, 254 (1965). *See also* opinions of the Attorney General of Virginia, 1964-65 at 129 and 1975-76 at 78.

The rationale of the above rule is that since a utility acquires its rights to make special or exceptional use of a public street or highway only by permissive grant of the state or a municipality, the utility's use is necessarily subordinate to the general public's principal and primary use of the street and highway. *State Highway Dept.* v. *Parker W. & S. Subdist.,* 247 S.C. 137, 143, 146 S.E.2d 160, 163 (1966).

In *PEPCO* v. *Highway Commissioner* and *Anderson* v. *Water Co.,* the utilities were not created and operated as political subdivisions of the State, such as HRSD in the present case. It has been held, however, in numerous cases in other jurisdictions that the common-law rule is applicable to a utility created and operating as a political subdivision of the state. *State Highway Dept.* v. *Parker W. & S. Subdist., supra,* 247 S.C. at 143-44, 146 S.E.2d at 163; *State Highway Comm.* v. *Town of Grants,* 66 N.M. 355, 359-60, 348 P.2d 274, 277 (1960); *City of San Antonio* v. *Bexar Metropolitan Water Dist.,* 309 S.W.2d 491, 493 (Tex. Civ. App. 1958); *Public Water Supply Dist.* v. *State Highway Comm.,* 244 S.W.2d 4, 7 (Mo. 1951).

■ In the present case, HRSD acquired no more than a permissive right to lay its pipes in, or along and under Indian River Road. The restrictions upon that grant contained in § 10(k) show that the legislature in no way intended that HRSD's use of the road or street would take precedence over the city's right to improve the street or road for use of the public. HRSD was charged with the knowledge that changes in the location of its facilities might be necessary to best serve the needs of the traveling public. Thus, the use of city streets by

HRSD for its sewer lines was subservient to the reasonable exercise of the paramount right of the city and state to improve Indian River Road. As a necessary incident to its exercise of powers over its streets, the city had the authority to require relocation of the permissive installations of the sewer pipes at HRSD's expense. There is nothing in § 10(k) to indicate it was the intent of the legislature that if it became necessary to relocate HRSD's lines, then the city would bear the expense of relocating HRSD's facilities. There is no sound reason that a utility created as a political subdivision of the State should have any greater rights in a city street than any other public utility. The language in § 10(k) does not alter the common-law rule of which the legislature was presumed to be aware, and HRSD is responsible for the cost incurred in relocating its sewer main.

■ HRSD argues that the trial court failed to give proper weight to the principle that long-continued administrative construction of statutes by officials charged with their enforcement is entitled to considerable weight. It claims the evidence shows that administrative officials charged with the enforcement of § 13 of the 1938 Act have interpreted the section to mean that the cost of relocation of the district sewer lines necessitated by street improvements would be borne by the city affected; and that the legislature, as a matter of law, was presumed to be aware of that administrative practice when it enacted § 10(k).[2] HRSD further contends that the evidence shows administrative officials have interpreted § 10(k) to have the same meaning as § 13 of the 1938 Act.

The trial court's opinion shows that the court considered the testimony relating to the practice whereby some cities in the district have borne the cost of relocating HRSD's sewer lines and concluded that the evidence was insufficient to establish that the practice was followed by each county, city, and town in the district and particularly by the city of Chesapeake. We agree with the trial court's conclusion. We further find that the evidence is insufficient to show that HRSD's interpretation of § 10(k) prompted certain cities to bear the cost of relocation of

---

2. We have held that construction placed upon a statute by public officials charged with its enforcement is entitled to be given weight by the court. If such interpretation has continued for a long period of time without change, the legislature is presumed to have acquiesced therein. *Peyton* v. *Williams*, 206 Va. 595, 600-01, 145 S.E.2d 147, 151 (1965).

the sewer lines, or that HRSD's interpretation of the section was so generally followed that it could be presumed the legislature was aware of such practice when it enacted the 1960 "enabling act."

Moreover, the language of § 10(k) is plain and unambiguous. It is unnecessary to resort to the rules of statutory construction when a statute is free from ambiguity and the intent is plain. *Portsmouth* v. *Chesapeake*, 205 Va. 259, 269, 136 S.E.2d 817, 825 (1964); *Woodward* v. *Staunton*, 161 Va. 671, 674, 171 S.E. 590, 591 (1933). It is our duty to construe the law as it is written. An erroneous interpretation of a statute by those charged with its enforcement cannot be permitted to override its clear meaning. Amendments of statutes can only be made by the legislature and not by the courts or administrative officers charged with their enforcement. *Richmond* v. *County of Henrico*, 185 Va. 176, 189, 37 S.E.2d 873, 879-80 (1946); *Hancock Company* v. *Stephens*, 177 Va. 349, 356, 14 S.E.2d 332, 334 (1941).

For the reasons stated, the judgment is

*Affirmed.*