COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Malveaux and Chaney
Argued at Lexington, Virginia

ROBERT MARSHALL CORNELIUS

OPINION BY
v.        Record No. 0187-23-3        JUDGE GLEN A. HUFF
FEBRUARY 13, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HIGHLAND COUNTY
Edward K. Stein, Judge

John E. Lichtenstein (Greg L. Lyons; Joanna M. Meyer;
Anthony F. Anderson; Brooks A. Duncan; Lichtenstein Law Group
PLC; Anderson Legal, on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following his *Alford* plea to second-degree murder, Robert Marshall Cornelius

("appellant") was sentenced in January 2019 to 20 years' incarceration with 10 years suspended.[1]

The Highland County Circuit Court ("trial court") committed appellant to the Department of

Juvenile Justice ("DJJ") "to serve a portion of this sentence as a serious juvenile offender under

Virginia Code § 16.1-285.1[,]" and ordered appellant to serve "the remainder of his sentence as

an adult" in the Department of Corrections ("DOC").  Between April 2021 and December 2022,

the trial court conducted three review hearings of appellant's custodial status in accordance with

the provisions of Code §§ 16.1-285.1 and -285.2.

Appellant appeals the trial court's order, issued in January 2023 after his third review

hearing, transferring him from DJJ to DOC.  Pointing to the uncontroverted evidence of his

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

"wholly positive progress" while committed in DJJ, appellant contends the trial court erred in both failing to grant his motion for release to parole and in transferring him to DOC "to serve the remaining portion of his sentence as an adult." For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND[2]

On September 17, 2017, appellant and his grandmother were home alone while appellant's parents were away in France. On that day, appellant went walking around his parents' property and checked on the livestock they kept. While outside, appellant fired a rifle and the bullet passed through a window of the house, striking and killing appellant's grandmother. Appellant was 14 years old at that time and had no juvenile record whatsoever. He was arrested and charged as an adult for the murder of his grandmother.[3] Despite maintaining that the killing was accidental, appellant entered an *Alford* plea to second-degree murder, in violation of Code § 18.2-32.[4]

---

[2] This Court views "the evidence in the light most favorable to the Commonwealth, as 'the prevailing party in the trial court.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 103 (2010)). "In doing so, the Court discard[s] all evidence of the accused that conflicts with that of the Commonwealth and regard[s] as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible from that evidence." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Parham v. Commonwealth*, 64 Va. App. 560, 565 (2015)).

[3] Appellant was certified as an adult under an earlier version of Code § 16.1-269.1(B), which required anyone over the age of 13 to be tried as an adult after a finding of probable cause. That statute was amended in 2020 and no longer requires certification for children aged 14 to 15. *See* 2020 Va. Acts ch. 988. Instead, Code § 16.1-269.1(B) now authorizes the juvenile and domestic relations district court (JDR court) to retain the child for juvenile proceedings after considering the factors laid out in subsection (A)(4).

[4] *See Alford*, 400 U.S. 25. "When offering an *Alford* plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense." *Cellucci v. Commonwealth*, 77 Va. App. 36, 43 n.2 (2023) (en banc) (quoting *Slusser v. Commonwealth*, 74 Va. App. 761, 767 n.2 (2022)).

The trial court sentenced appellant, on January 17, 2019, to a blended sentence of 20 years' incarceration, "with 10 years suspended, 10 years to be served by incarceration, and 5 years to be served on supervised probation." In doing so, the trial court expressly ordered appellant to "serve a portion of this sentence as a serious juvenile offender under Virginia Code § 16.1-285.1 until he is 21 years old" and then "serve the remainder of his sentence as an adult." The court then committed appellant to DJJ for 48 months "until his statutory release date of February 18, 2024, at which time he will transfer to the Department of Corrections to serve out the remain[ing 72 months] of his adult sentence."[5] Appellant was placed at the Bon Air Juvenile Correctional Center ("BAJCC") on February 6, 2019.

In accordance with the provisions of Code §§ 16.1-285.1 and -285.2, the trial court conducted a "two year Serious Offender Review" hearing for appellant on April 28, 2021.[6] At that hearing, appellant's "treatment team recommended to the court that [appellant] remain at DJJ" because he had not "taken full advantage of individual counseling in order to develop empathy and address grief regarding the loss of his grandmother." Appellant continued to insist that the shooting was accidental, but the law enforcement agents who investigated the incident "stated that the precision required to shoot through the window and the fact that the shell casing and rifle were found in two different locations made it unlikely that the shooting was accidental."

Investigative records also showed that appellant fled the house after the shooting without calling 911, leaving behind a handwritten apology note that he later claimed was the product of

---

[5] The initial sentencing and commitment order was entered by Judge John E. Wetsel, Jr.

[6] Code § 16.1-285.1(F) requires DJJ to "petition the committing court for a determination as to the continued commitment of each juvenile sentenced under this section at least sixty days prior to the second anniversary of the juvenile's date of commitment and sixty days prior to each annual anniversary thereafter."

sheer panic.[7]  After driving one of his parents' cars to the Richmond International Airport,

appellant attempted to obtain an airline ticket, initially telling employees that he had permission

to travel alone but then changing his story multiple times upon further questioning.[8]  Appellant

was ultimately arrested at the airport and police found missing items from the family home in his

possession, including appellant's passport and credit cards belonging to both his father and

grandmother.  On April 29, 2021, "[a]fter reviewing the progress report of the [DJJ] . . . and

considering the factors set forth in Code § 16.1-285.2[,]" the trial court ordered appellant to

continue his commitment in DJJ.

Appellant's second review hearing was held on December 21, 2021.[9]  At that hearing,

appellant's probation officer advised the trial court "about a potential parole plan that he had

created with the [appellant's] family[,] including services and levels of supervision."  He refused,

however, to give any "recommendation as to [appellant's] release or continued confinement."  At

the end of the hearing, the trial court "took the matter under advisement in order to consider

documentary evidence that had been submitted the evening before . . . ."  The next day, after

having had the opportunity to consider "all the evidence" and having considered all "the factors

---

[7] The updated risk assessment submitted to the trial court for appellant's third review hearing contained a section on the "Offense History," which described "conflicting reports of what a note found in the upstairs bathroom read.  According to the social history, the note read, 'He made me do it.  I'm sorry.'  According to the police report, the note read, 'I'm sorry.'" According to appellant, he wrote "weird notes I don't remember writing[,]" stating, "The boy goes with me" and "I'm sorry.  He made me do it."  Yet, appellant "was not able to explain why he had written those notes or what they were intended to mean. . . .  He added, 'If I was thinking right I would have called 911 and asked for assistance.'"

[8] In providing his account of the incident for the updated risk assessment in October 2022, appellant acknowledged that he lied or deflected "most of the [airport] workers' questions, as he was unclear of what to say."

[9] Whereas appellant's first review hearing was conducted a couple months after the "second anniversary" of his commitment to DJJ, his second review hearing was conducted earlier than the "annual anniversary thereafter" provided for by Code § 16.1-285.1(F).

listed in Code § 16.1-285.2," the trial court ordered appellant's continued commitment in DJJ "to serve the remainder of his original commitment."

On December 16, 2022, appellant filed a motion for juvenile parole under Code § 16.1-285.2(E). Highlighting the cognitive differences between juveniles and fully matured adults, appellant asserted that "Juvenile Parole affords many more resources and much more judicial discretion to support the rehabilitative purposes that drive juvenile sentencing." In support of his request for parole, appellant stated the following facts, which were corroborated by documentation from BAJCC:

> [he] served a year and a half on home confinement [prior to his conviction] without any issue whatsoever despite the strictest of restrictions. He has no[t yet] served 4 years in juvenile detention. . . . [He] underwent a massive adjustment with remarkable respect and success at Bon Air, notwithstanding that after his first year, he and the other residents were forced to spend a great deal of time in 23-hour-per-day COVID-19 solitary isolation.
>
> . . . .
>
> During his time at Bon Air, [appellant] has had no aggressive or violent interactions. In fact, he helped staff break up fights on 2 separate occasions, once in which he was injured. A third time, another resident suddenly and without any provocation attacked [appellant], punching him repeatedly in the face, and Bon Air staff who witnessed the attack documented that [appellant] refused to fight and did not hit back or escalate the situation.

Appellant further asserted that the trial court should consider his "reaction to the Court's denial of his release" after each of the two previous hearings because it showed that he "redoubled his efforts to learn and improve himself through counseling, secondary education, the attaining of his high school diploma, the pursuit of post-secondary educational opportunities, working with the student government at Bon Air, and . . . helping those around him, both staff and fellow residents."

The trial court conducted appellant's third review hearing on December 20, 2022, at which it also considered his motion for juvenile parole.[10]  Appellant was 19 years old at that time.  The records from his two prior review hearings were included in the case file that the trial court reviewed, including documents related to the Commonwealth's initial investigation of the shooting and prosecution of appellant as an adult.  The latest progress report from DJJ contained copies of those records in addition to an updated risk assessment prepared on October 12, 2022.

Seven witnesses testified on appellant's behalf, including two BAJCC employees and three individuals who worked with appellant in their therapeutic or psychiatric capacity.  Appellant further submitted nine letters from friends, family, and community members in support of his request to be released to juvenile parole.  Against the advice of counsel, appellant even submitted a handwritten statement in which he explained that he "chose to do an [*Alford*] plea because [he] wanted to show everybody, including [his] family, that [he] never intended [his] Grandmother's death and that [he] was taking responsibility."

Despite presenting no evidence at the hearing, the Commonwealth urged the trial court to transfer appellant from DJJ to DOC.  In support of that request, the Commonwealth relied upon the facts of the underlying offense and directed the trial court to consider the "judicial review summary report of risk assessment."  After opining that "there can[not] be a sincere acceptance of responsibility without the acceptance of an appropriate punishment[,]" the Commonwealth argued that appellant's sentence of 10 years active time incarcerated "is an appropriate sentence that takes into account his age then, as well as how he's progressed over the past three years."  Notwithstanding that position, the Commonwealth acknowledged that the trial court "has the option to send [appellant] back to Bon Air" or that, "[i]f the Court wishes to extend something to

---

[10] The record contains a transcript of only the most recent review hearing from December 2022.

[appellant], it can reduce the remainder of his active sentence[] . . . in light of his great behavior" during his time in DJJ.

The trial court took two weeks to review the "tremendous amount of written material" involved in the case. In its final order, entered January 3, 2023, the trial court acknowledged that it had "considered all of the evidence, including the progress report submitted by the [DJJ], evidence heard ore tenus and exhibits presented, as well as the arguments of counsel." Having considered those voluminous materials in the context of "all of the factors set forth in Code § 16.1-285.2[(E)]," the trial court ordered appellant "be transferred to the [DOC] to serve the remaining portion of his sentence as an adult."[11]

Appellant filed a motion to reconsider on January 6, 2023, arguing that "[n]o evidence was presented to support departing from the original sentencing order to transfer [appellant] to adult prison before his 21st birthday." He further asserted that if he were "removed from the juvenile system and transferred into the adult [DOC,]" he would not receive the benefits of the special resources and services devoted exclusively to juveniles committed to DJJ. The trial court denied appellant's motion on January 12, 2023, finding that the issues raised therein were "fully litigated in the prior hearing . . . ."[12]

This appeal followed.

ANALYSIS

Appellant raises four assignments of error on appeal that collectively challenge the trial court's January 2023 order transferring him from DJJ to DOC. He first asserts, based on the

---

[11] The same judge, Edward K. Stein, presided over all three of appellant's review hearings.

[12] Notwithstanding its denial of appellant's motion for reconsideration, the trial court entered an order on January 18, 2023, staying appellant's transfer to DOC "until his appeal is concluded or he reaches his 21st birthday, whichever sooner occurs."

- 7 -

evidence presented at the review hearing, that the trial court erred in denying his motion for parole. Secondly, he argues that the court's transfer decision was "unreasonable" and, thirdly, demonstrated an abuse of discretion for failure to "meaningfully consider" all relevant factors and "mitigating evidence." Finally, appellant claims that the effects of transferring him to DOC constitute reversible error. He specifically argues that the transfer order "lengthened his time to serve in the adult penitentiary from what was ordered by the original sentencing judge," "deprived [him] of future opportunities for release and of resources provided to youthful offenders," and denied him "meaningful opportunity for review and release based on demonstrated maturity and rehabilitation," in contravention of "the rehabilitative aims of [the] juvenile sentencing" statutes.

## I. Standard of review

The parties are sharply divided on the applicable standard of review for the trial court's judgment made pursuant to Code § 16.1-285.2. Appellant asserts that a de novo standard is appropriate because the trial court's errors stem from its interpretation and application of the statute. *See Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 76 (2015) ("To the extent an assignment of error involves statutory construction, we review these issues *de novo*."). The Commonwealth contends that the issues here involve the trial court's exercise of its sentencing authority, which is reviewed for an abuse of discretion. *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) ("A sentencing decision will not be reversed unless the trial court abused its discretion." (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007))).

This Court agrees with the Commonwealth and reviews the trial court's judgment for an abuse of discretion.[13] "When we say that a circuit court has discretion, we mean that 'the [trial] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021) (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).[14] "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). It necessarily follows that "the abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)).

The Supreme Court has repeatedly recognized that, as long as made "within the lawful boundaries of applicable sentencing statutes and constitutional limitations[,]" sentencing decisions "are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy*

---

[13] A trial court abuses its discretion by (1) failing to consider a significant relevant factor, (2) giving significant weight to an irrelevant or improper factor, (3) committing a clear error of judgment in assigning weight to all proper factors, or (4) making a mistake of law. *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021); *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013).

[14] This Court readily acknowledges that "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008). Although this "standard of review necessarily must include a review of any legal conclusions made concomitant with a lower court's exercise of discretion, that does not mean abuse of discretion review is partially de novo." *Lawlor*, 285 Va. at 214. Rather, "[t]o the extent the Court's analysis involves statutory interpretation, questions of statutory construction are also reviewed under a de novo standard." *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022).

*Du*, 292 Va. at 563. That approach is consistent with the relevant statutory scheme under the plain language of Code §§ 16.1-272, -285.1, and -285.2, all of which relate to the sentencing of juveniles.[15] "When a statute, as written, is clear on its face, [this Court] will look no further than the plain meaning of the statute's words." *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 455 (2022) (quoting *Commonwealth, Dep't of Tax'n v. Delta Air Lines, Inc.*, 257 Va. 419, 426 (1999)).[16]

As applicable here, Code § 16.1-272(A)(1) authorizes the trial court to impose one of three different sentencing options for a juvenile "convicted of a violent juvenile felony."[17] When first setting appellant's sentence on January 17, 2019, the trial court selected option (i), ordering appellant to "serve a portion of the sentence as a serious juvenile offender under § 16.1-285.1 and the remainder of such sentence in the same manner as provided for adults." Code § 16.1-272(A)(1)(i). Pursuant to Code § 16.1-285.1(A), a trial court "may order the juvenile committed to the Department of Juvenile Justice for placement in a juvenile correctional center" if the court has found "that commitment under this section is necessary to meet the rehabilitative needs of the juvenile and would serve the best interests of the community."

---

[15] "[C]losely related statutes must be read as being consistent with one another." *Rivas v. Commonwealth*, 51 Va. App. 507, 511 (2008) (quoting *Austin v. Commonwealth*, 42 Va. App. 33, 40 (2003)).

[16] "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Haefele v. Commonwealth*, 75 Va. App. 591, 599 (2022) (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). In doing so, this Court "must presume that the General Assembly chose, with care, the words that appear in a statute, and [it] must apply the statute in a manner faithful to that choice." *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016).

[17] *See* Code § 16.1-228 (defining "[v]iolent juvenile felony" as "any of the delinquent acts enumerated in subsection B or C of § 16.1-269.1 when committed by a juvenile 14 years of age or older"); *Martinez v. Commonwealth*, 71 Va. App. 318, 329 n.4 (2019) ("Code § 16.1-269.1(B), in turn, refers to the offenses of murder and aggravated malicious wounding."); Code § 16.1-269.1. Appellant entered an *Alford* plea of guilty to second-degree murder.

The trial court here originally sentenced appellant to 20 years' incarceration with 10 years suspended, and directed appellant to "serve a portion of this sentence as a serious juvenile offender under Virginia Code § 16.1-285.1 until he is 21 years old[,]" after which he would "serve the remainder of his sentence as an adult."[18] "Any juvenile committed under the provisions of this section shall not be released at a time earlier than that specified by the court in its dispositional order *except as provided for in § 16.1-285.2*." Code § 16.1-285.1(F) (emphasis added). Regardless of whether it seeks "an earlier release of the juvenile[,]" DJJ is required to "petition the committing court for a determination as to the continued commitment of each juvenile . . . at least sixty days prior to the second anniversary of the juvenile's date of commitment and sixty days prior to each annual anniversary thereafter." *Id.*

Thus, in accordance with the timetable laid out in Code § 16.1-285.1(F), the trial court must hold regular hearings to review a juvenile's commitment to DJJ as part of his sentence.[19] Code § 16.1-285.2 governs the procedures of such hearings and restricts what sentencing actions the court may take following each hearing. Subsection (E), applicable to appellant's situation, requires the trial court to select one of only four options: (i) order the juvenile to serve the rest of their sentence in DOC, (ii) suspend "the unserved portion of the adult sentence," (iii) continue the juvenile's commitment to DJJ for a specified period, or (iv) release the juvenile "under such terms and conditions as the court may prescribe." Code § 16.1-285.2(E).

---

[18] Code § 16.1-285.1(C) provides that, "[i]n ordering commitment [to the DJJ] pursuant to this section, the court shall specify a period of commitment not to exceed seven years or the juvenile's twenty-first birthday."

[19] Code § 16.1-285.2(A) provides, in relevant part, that the trial court "shall schedule a hearing within thirty days" of receipt of a petition from DJJ "for a hearing concerning a juvenile committed under § 16.1-285.1 . . . ." This section also requires the trial court to "appoint counsel for the juvenile pursuant to § 16.1-266" and "provide a copy of the petition, the [DJJ] progress report . . . and notice of the time and place of the hearing" to all parties and legal representatives involved in the case. Code § 16.1-285.2(A).

Appellant does not specify how the trial court misinterpreted any of these statutes. Nor does he allege that the trial court's transfer order exceeded the limited boundaries of Code § 16.1-285.2(E). To the contrary, appellant primarily contends that the trial court erred by failing to consider certain factors and by incorrectly weighing the evidence presented. The import of those arguments and the language used to make them are consistent with a challenge to the trial court's discretionary authority and the reasonableness, rather than the legality, of its judgment. Therefore, this Court reviews only whether the trial court's transfer order constitutes an abuse of discretion under Code § 16.1-285.2.

## II. Trial court did not abuse its discretion under Code § 16.1-285.2

As noted above, Code § 16.1-285.2 dictates how the trial court conducts and resolves the required review hearings on a juvenile's current commitment to DJJ. Subsection (E) requires the trial court to select one of only four options for carrying out the juvenile's sentence: transfer to DOC, suspension of adult sentence, continued commitment in DJJ, or release "under such terms and conditions as the court may prescribe." Code § 16.1-285.2(E). Following appellant's first review hearings in April and December of 2021, the trial court exercised the third option to continue appellant's commitment in DJJ. After appellant's most recent review hearing in December 2022, the trial court invoked the first option and ordered that appellant be transferred to DOC "to serve the remaining portion of his sentence as an adult." That transfer order falls squarely within the range of available options the trial court was authorized to make under the plain language of the statute. *See Minh Duy Du*, 292 Va. at 563-64 ("When exercising its discretionary power, however, the trial court 'has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" (quoting *Lawlor*, 285 Va. at 212-13)).

- 12 -

This Court first recognizes that, although the statute mandates certain actions the trial court must take as part of the review hearings for serious juvenile offenders committed to DJJ, Code § 16.1-285.2 does not create a formula, or even a set of guidelines, for the court to follow in determining which of the four sentencing options enumerated in subsection (E) it should select in any particular case.[20] That decision is left in the sole discretion of the trial court. Other than requiring the court to "consider the progress report" submitted by DJJ, the statute does not set forth any criteria or information the court must consider or articulate in making its ruling. Code § 16.1-285.2(B)-(C). Instead, subsection (C) merely permits the court to "consider additional evidence from (i) probation officers, the juvenile correctional center, treatment professionals, and the court service unit; (ii) the juvenile, his legal counsel, parent, guardian or family member; or (iii) other sources the court deems relevant." Code § 16.1-285.2(C).

Notwithstanding the lack of required considerations under Code § 16.1-285.2, the record here establishes that the trial court reviewed the significant volume of "additional evidence" provided by appellant before issuing its final order on January 3, 2023. In fact, the trial court expressly stated in both its final order and accompanying letter to the parties that, following conclusion of the December 20, 2022 review hearing, it "took the matter under advisement in order to have the opportunity to consider all the evidence." The trial court affirmed that it had indeed "considered all of the evidence," including the DJJ progress report, witness testimony,

---

[20] Subsection (E) even begins by stating: "In the case of a juvenile convicted as an adult and committed as a serious offender under subdivision A 1 of § 16.1-272, at the conclusion of the review hearing and notwithstanding the terms of any plea agreement or commitment order, the circuit court shall order" one of the four options imposing or modifying the juvenile's original sentence. Code § 16.1-285.2(E).

and "exhibits presented, as well as the arguments of counsel" before rendering judgment in accordance with Code § 16.1-285.2(E).[21]

Contrary to appellant's arguments, the record does *not* demonstrate that the trial court failed to "meaningfully consider" any of the specific facts or evidence presented at the December 2022 review hearing.[22] "The trial court's rulings come to us with a presumption of correctness . . . [because it] is presumed to know and correctly apply the law 'absent clear evidence to the contrary in the record.'" *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022) (citations omitted) (quoting *Milam v. Milam*, 65 Va. App. 439, 466 (2015)). And "[t]he burden is upon the appellant to provide th[is Court] with a record which substantiates the claim of error." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). To that end, the absence of detailed reasoning in a court's order is not inherently evidence of an abuse of discretion.

---

[21] At a minimum, the progress reports "shall describe (i) the facility and living arrangement provided for the juvenile," "(ii) the services and treatment programs afforded the juvenile, (iii) the juvenile's progress toward treatment goals and objectives," "(iv) the juvenile's potential for danger to either himself or the community, and (v) a comprehensive aftercare plan for the juvenile." Code § 16.1-285.2(B).

[22] By inserting the word "meaningfully," appellant attempts to alter the standard for an abuse-of-discretion review. This Court rejects that suggestion. Appellant provides no boundaries of the word "meaningfully" in this context, and the abuse-of-discretion standard consistently applied by Virginia's appellate courts does not contain that qualitative language. *See, e.g.*, *Galiotos*, 300 Va. at 11 (holding that a court abuses its discretion "when all proper factors, and no improper ones, *are considered*, but the court, in weighing those factors, commits a clear error of judgment" (emphasis added) (quoting *Landrum*, 282 Va. at 352)). Nor do the relevant statutes on juvenile sentencing, including Code § 16.1-285.2, use the word "meaningfully" to describe a trial court's consideration of certain factors, regardless of whether such consideration is mandatory or permissive. *See generally Janvier v. Arminio*, 272 Va. 353, 366 (2006) ("The duty of the courts is 'to construe the law as it is written.' . . . Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning.'" (first quoting *Hampton Roads Sanitation Dist. Comm'n v. City of Chesapeake*, 218 Va. 696, 702 (1978); and then quoting *Jackson v. Fid. & Deposit Co.*, 269 Va. 303, 313 (2005))).

Unless expressly mandated by statute or operation of law, a trial court is not required to "state for the record the reasons underlying their decisions[,]" *Shannon v. Commonwealth*, 289 Va. 203, 206 (2015), nor include "findings of fact and conclusions of law" in a final order, *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). Code § 16.1-285.2 does not require otherwise.[23]

Notwithstanding that principle, appellant offers no proof on appeal that the trial court "commit[ted] a clear error of judgment" when weighing the evidence, including not only the "mitigating" facts presented by appellant but also the underlying facts of the offense contained in DJJ's progress report and accompanying documents.[24] *See Guest v. Commonwealth*, 78 Va. App. 187, 197 (2023) ("[B]arring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992))). When making sentencing decisions, for which Code § 16.1-285.2 provides, "[i]t is within the trial court's purview to weigh any mitigating factors presented by the defendant." *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

Moreover, this Court has declined to adopt a per se approach to mitigating evidence, whereby the trial court would be required to reduce a defendant's sentence if presented with certain types or categories of facts. Instead, "[w]hether a certain fact, such as a defendant's age,

---

[23] *Compare* Code § 16.1-285.1(B) (requiring the court to consider certain factors and make specific determinations before committing a juvenile to DJJ), *and Suleiman v. Commonwealth*, 26 Va. App. 506, 511 (1998) (holding that Code § 16.1-285.1 "requires the trial court to make certain findings prior to sentencing a juvenile as a serious offender"), *with* Code § 16.1-285.2(C) (only requiring the court to "consider [DJJ's] progress report" at a juvenile's commitment review hearing).

[24] *See generally Cellucci*, 77 Va. App. at 49 ("Generally, evidence in mitigation . . . relates to facts that could impact the appropriate degree of punishment" because they "'tend to lessen an accused's moral culpability for the crime committed.'" (quoting *Wilson v. Commonwealth*, 54 Va. App. 631, 642 (2009))).

tends to lessen his moral culpability depends on the particular circumstances of each case." *Cellucci v. Commonwealth*, 77 Va. App. 36, 52 (2023) (en banc). Consequently, consideration of either "mitigating evidence" or "additional evidence" for purposes of Code § 16.1-285.2(E) does not guarantee that the trial court will grant the specific relief a defendant seeks. *See id.* ("[T]he trial court was not obligated to find that the evidence highlighted by the appellant actually mitigated his crime.").[25]

Neither does the statute create a checklist of factors which, if satisfied, require the court to take one action over another, such as to release appellant to parole or suspend the entirety of his adult sentence. Appellant is not entitled to any particular outcome here.[26] Rather, the trial court's decision under Code § 16.1-285.2(E) is entirely discretionary and this Court is mindful that "[t]he exercise of discretion thus presupposes 'that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable.'" *Minh Duy Du*, 292 Va. at 564 (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)).

---

[25] Code § 16.1-227, which sets out the general purpose and intent of proceedings in the JDR court, states in relevant part that these "law[s] shall be interpreted and construed so as to . . . protect the community against those acts of its citizens, both juveniles and adults, which are harmful to others and to reduce the incidence of delinquent behavior and to hold offenders accountable for their behavior." Code § 16.1-227(4).

[26] Appellant's motion for parole is subsumed under Code § 16.1-285.2(E) and does not raise a separate standard of review for either the trial court or this Court. The effect of that motion is equivalent to appellant simply asking the trial court to select option (iv) under Code § 16.1-285.2(E). Furthermore, Code § 16.1-285.1(F) does not provide a separate basis for appellant's motion; it states that only DJJ "may petition the committing court . . . for a hearing as provided for in § 16.1-285.2 for an earlier release of the juvenile when good cause exists for an earlier release." The December 2022 review hearing was scheduled in accordance with the statutory timeline; it was not based on a petition for early release by DJJ. And although DJJ developed a plan for supervised probation if the trial court granted appellant's motion for parole, it made no recommendation as to how the court should rule on either that motion or on the annual review itself.

- 16 -

That appellant is dissatisfied with the result below does not equate to an abuse of the trial court's discretionary authority under Code § 16.1-285.2. *See Martin v. Lahti*, 295 Va. 77, 87-88 (2018) ("[A] reviewing court [must] show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." (quoting *Lawlor*, 285 Va. at 212)). Based on the record here, this Court cannot conclude that the trial court's consideration of the evidence, nor its resulting judgment, was either "affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

Appellant's remaining arguments are likewise unavailing under the clear statutory language. Without legally justifying why the effects of being transferred to DOC constitute reversible error under Code § 16.1-285.2, appellant contends that such transfer will unlawfully lengthen his sentence and deprive him of the benefits afforded juvenile offenders, including guaranteed review and consideration for release. This Court finds no support within the applicable statutes or caselaw for appellant's claim that the trial court exceeded its authority to issue the January 2023 order transferring appellant to DOC.

To the contrary, Code § 16.1-285.2 contemplates and authorizes the type of transfer order at issue here, subject only to the trial court's discretion. Indeed, the leniency provided to juvenile offenders under this statute takes the form of the mandatory annual reviews, which provide repeated opportunities for the trial court to deviate from the original sentencing order in one of the four enumerated ways. *See* Code § 16.1-285.2; *see also* Code § 16.1-285.1(E) ("The court which commits the juvenile to the Department [of Juvenile Justice] under this section shall have continuing jurisdiction over the juvenile throughout his commitment."). In doing so, the trial court *must* consider DJJ's progress report, but *may* also consider any other piece of evidence

or relevant factor, including the juvenile's "demonstrated maturity and rehabilitation" which appellant focuses on here.[27]

Under that sentencing framework, a juvenile can receive the benefit of early release to parole or suspension of their adult sentence. Such decisions, however, are at the sole discretion of the trial court; the statutes set out no specific circumstances under which the trial court is required to admit a juvenile to parole or suspend their adult sentence. And if the trial court determines that those options are not appropriate under the circumstances of a particular case, it must choose whether to send the juvenile back to DJJ or transfer him to DOC. Furthermore, even if the trial court here had sent appellant back to DJJ, appellant would have eventually aged out and been automatically transferred to DOC, thereby ending the trial court's discretionary authority under the provisions of Code § 16.1-285.2. *See* Code § 16.1-285.1(C) (providing that a juvenile may be committed to DJJ for a period "not to exceed seven years or the juvenile's twenty-first birthday").

Therefore, under the natural progression of these sentencing statutes, a juvenile whose adult sentence remains unsuspended will eventually end up in DOC regardless of whether the trial court exercises its discretion to issue a transfer order pursuant to Code § 16.1-285.2. When that happens, the "benefits" a *juvenile* offender might receive as a result of Code § 16.1-285.2's mandates to the trial court are extinguished by operation of law, thereby rendering the offender's ability to seek early release or engage in rehabilitative services the same as what it would have been had he been sent to DOC rather than DJJ in the first instance. Because such "benefits" of

---

[27] Appellant argues on brief that his transfer to DOC denied him "meaningful opportunity for review and release based on demonstrated maturity and rehabilitation." That statement is neither true nor does it demonstrate that the trial court abused its discretion under Code § 16.1-285.2. Although the trial court can consider a juvenile's "maturity and rehabilitation" during each review hearing, it is not required to do so nor is its decision under Code § 16.1-285.2(E) limited to such consideration.

Code § 16.1-285.2 are merely derivative of the trial court's discretion during mandated review hearings, they are not conferred upon juvenile offenders as a personal right to which the juvenile is entitled, let alone guaranteed for any definite period of time. Had appellant been sent to DOC at the time of his sentencing, rather than being committed to DJJ first, he would never have been afforded the opportunity to benefit from the review periods established by Code § 16.1-285.2. That his transfer actually occurred later, after his third review hearing, does not change this Court's analysis of the nature and effect of Code § 16.1-285.2.

In sum, appellant has not been deprived of any rights for which he can claim recompense. And although a trial court's choice to transfer a juvenile to DOC sooner than originally ordered may seem harsh, it is nevertheless permitted by statute. *See* Code § 16.1-285.2(E) (authorizing the trial court to lengthen a juvenile's adult sentence by ordering "(i) the juvenile to begin serving any adult sentence in whole or in part that *may* include any remaining part of the original determinate period of commitment . . . ." (emphasis added)).[28] In properly exercising that discretion here, the trial court neither deprived appellant of any statutory right nor committed an error of law.

CONCLUSION

Code § 16.1-285.2 grants the trial court discretion to order a juvenile offender's transfer from DJJ to DOC following a review hearing. The record here does not show that the trial court abused its discretion by choosing that option, as opposed to sending appellant back to DJJ or

---

[28] To the extent appellant's objection to additional time to be spent in DOC implies that he will not get credit for time spent in DJJ, as contemplated by Code §§ 16.1-272(E) and 53.1-202.2(B), that claim is not ripe because he has not been denied such credit by DOC. Additionally, the transfer order here is distinct from that in *Martinez*, 71 Va. App. at 327-28, where the trial court's nunc pro tunc order, issued after DOC interpreted the initial order to the contrary, "reiterated the ruling that appellant was sentenced to serve 'five years of active time with [DOC]' and . . . clarified that appellant did not qualify under Code § 53.1-202(B) to receive credit for time served in DJJ." *Id.* at 328 (first alteration in original).

releasing him to parole, despite the uncontradicted evidence appellant presented at his December 2022 review hearing.  Accordingly, this Court affirms the trial court's judgment.

*Affirmed.*